## CUNNINGHAM AND WIFE v. POOL.

1. The return by a guardians from time to time of the account between himself and ward, and ordering the same to be recorded by the Orphans' Court is not such a *res adjudicata* as will prevent either party from showing an error in such returns, and estop the court upon final settlement from examining the debits and credits on both sides, from the commencement of the guardianship, and rendering such a decree as will be proper upon a view of all the facts. And the marriage of a female ward, after such occasional returns, cannot prejudice the guardian, or deprive him of credits that would have been available if the ward had continued sole.

2. The act of 1821, which authorizes the Judge of the Orphans Court to summon a jury to determine a contested fact, is not imperative upon the Court, so as to take from the Judge the power to decide for himself in such a case; and if no orror appears in his decision made without the intervention of a jury, it will not be reversed.

3. The act of 1803, which provides for receiving, auditing and stating the accounts of guardians, &c. and for exceptions to the report thereof, does not require a written voucher to support each item, or warrant the exclusion of oral testimony upon an exception to the stated account.

4. A mere gratuitous remark by a guardian, that he would not charge his ward for board, is not obligatory upon him, and the statute of limitations will not avail against such a charge, upon a final settlement between him self and ward.

5. In the settlement of a guardian's accounts, his credits should be allowed as of the time when the ward's estate became chargeable with them; and if interest is calculated against the guardian upon all the *debits*, it should also be allowed upon his *credits*.

6. A decree upon the final settlement of a guardian's accounts will not be reversed at the instance of the *ward*, because the Orphans' Court has directed each party to pay his own costs.

Writ of Error to the Orphans' Court of Perry.

This was a proceeding for the settlement of the accounts of a guardianship. It appears from the transcript, that the defendant in error was appointed in June, 1833, by the Orphans' Court of Perry, as the guardian of the person and estate of Margaret A. Utley, an infant heir of William S. Utley, deceased, and entered into bond with surety accordingly.

In March, 1845, a decree was rendered, reciting that the guardian had previously filed his accounts and vouchers for settlements, that publication as required by the statute had been duly made, and that the ward together with John D. Cunningham, with whom she had intermarried, made themselves parties defendant to the proceedings.

The account of the guardian being stated the defendants objected to the allowance of the vouchers from 1 to 8, inclusive, because they were embraced by one of the previous annual settlements made with the guardian ; but the objection was overruled, and they thereupon excepted.

The defendants also objected to the items and vouchers, from 10 to 13, inclusive, and from 15 to 27, inclusive, for the reason above stated ; and because these annual settlements were made previous to the marriage of the ward, and if now opened, would prejudice the rights of her husband. This objection was also overruled, and thereupon the defendants excepted.

The defendants then tendered issues, alledging that the guardian should be charged with a promissory note made by Stewart George and John Heart, on the 2d January, 1837, payable twelve months after date, because they say, that by due diligence it could have been collected ; the makers were solvent and able to pay it when it matured ; and after it became due and payable, the guardian converted it to his own use. The court sustained a demurrer to the several issues tendered, with the exception of that which makes the latter allegation ; to this the guardian made a formal denial of the conversion of the note.

Evidence was adduced to sustain an item in the guardian's account, for the board of his ward during the first year after his appointmont ; but the defendants objected to parol testimony, on the ground that written testimony should have been filed with the account ; this objection was overruled, and the defendants again excepted. Upon this point it was also proved that the guardian said that he should not, or had not charged his ward for any thing he might do, or had done for her—*further*, that he would not charge her for the first two or three years. Thereupon the defendants moved the court to summon a jury of bystanders to determine whether they

were chargeable with the item in question ; this motion was overruled, and thereupon the defendants excepted.

The court then was moved to reject that item for board, because the same was not sustained by any voucher filed with the account, and was not established by the proof ; because the guardian declared that he would not charge his ward for what he had done ; because the claim was a stale demand, barred by the statute of limitations, and there were annual settlements subsequent to its accrual made with the Orphans' Court. But this objection was overruled, the item allowed as a charge against the ward, and thereupon the defendants excepted.

It was insisted by the defendants that the charges made by the guardian for board from 1833 to 1842, while the ward boarded in his family, should be made one gross sum, and now credited against indebtedness to them, instead of being annually deducted from the accruing income of the ward ; but the court ruled otherwise, and thereupon the defendants excepted.

The defendants moved the court to tax the costs of *subpœnas* and witnesses thus : where the credits claimed by the guardian had been reduced by the counterproof, that the fees should be charged to the guardian ; that where the credits were wholly rejected, the guardian should pay all the witnesses summoned and examined thereto. Both of these motions were overruled, and the clerk ordered to tax each party with the costs of his own witnesses ; to which the defendants excepted.

In stating the account, the court allowed interest to the guardian upon the several items of his account from the time he had paid out the monies, or they were due from him, and charged him with interest from the time he had received money, or it was due to him as guardian ; and added the interest to the principal of the *debit* or *credit* side of the account, according as it had been calculated upon the one, or the other. To this mode of computing interest, the defendants excepted.

It was agreed by the counsel for the parties, upon the record, that the objection taken for the allowance of the ward's board in 1833, should apply to each subsequent year.

78

A decree was rendered againse the guardian for a balance in his hands to the credit of the ward, amounting to one hundred and fifty four dollars and forty cents, after paying to the clerk of the court thirteen dollars and sixty-three cents, " the ordinary fees of final settlement." It was further adjudged that the residue of the costs be paid by the party at whose instance it occurred, except the *per diem* fees of the clerk for six days, which are to be paid by the guardian : for all which execution may issue after thirty days. The account, as stated by the court, is made a part of the record, by the decree, so far as it is necessary to make the exceptions thereto intelligible.

H. Davis for the plaintiffs in error, made the following points : 1. The orders of the Orphans' Court, adjusting the guardian's accounts, previous to the final settlement, are binding, and could not have been set aside, save only for fraud or mistake. [Clay's Dig. 304, § 37 ; 267, § 3 ; 3 Bibb's R. 352 ; 2 Litt. Rep. 316, 346 ; 5 Monr. Rep. 522.]

2. Guardians, whose accounts are filed in the Orphans' Court for settlement, should be accompanied with the vouchers. [Clay's Dig. 267, § 3 ; 229, § 41 ; 2 Lomax's Exr's. 332, § 35.]

3. A guardian is not entitled to interest upon charges made against his ward, until after such charges are passed and allowed. [2 Lomax's Ex'rs, *supra*.]

4. A trial by jury may be claimed in all cases, in the Orphans' Court, where an issue of fact is offered.

5. A promise by a guardian that he will not charge his ward, while the ward lives in his family, is binding. [1 Am. Ch. Dig. 498, § 10 ; 502, § 29.] The proof is abundant to show the promise, and that the charge was only made because the ward's husband would not settle with the guardian as the latter desired about the land. The allowance of the charge for board would be unjust to the husband, and a fraud upon his rights.

6. Interest should be calculated upon the ward's money in the guardian's hands ; but no interest should be computed upon the charges in favor of the guardian against the ward ; but they should be deducted as payments made on the day

of their allowance by the court.  [2 Lomax on Ex'rs, 161, §
21; McPher. on Inf. 259, 277.]

A. GRAHAM, (of Perry,) for the defendant, insisted—The
guardian did not propose to litigate matters closed by the
annual settlements, but only to show an omission of some
matter to his prejudice, and ask that it be supplied.  [See
Porter's Rep. 328.]  In this case there had been no annual
settlements.  The guardian occasionally went into court,
charged himself with certain amounts, filed a few vouchers,
&c., but there was no closing or balancing of accounts; con-
sequently it was indispensable to an adjustment of the ac-
counts, that they should all be brought before the court, al-
lowed, or disallowed, and a balance struck.

The granting or refusing a jury trial by the Orphans' Court
to determine litigated facts, is discretionary with the court,
and no matter what course the court may pursue, its decree
cannot be reversed.    [Clay's Dig. 308, § 32;    2 Porter,
*supra.*]

In a case of this kind parol testimony is clearly admissible.
Depositions are specially provided for, and these are evidence
of that character.   [Clay's Dig. 270, § 19.]

Even if the guardian said he should not charge his ward,
he is not bound by such a remark, but may change his pur-
pose.  He however meant nothing more than he did not
charge his ward while he was administrator of her father's
estate.

If the guardian is entitled to credits for money laid out for
his ward's benefit, he is entitled to interest upon them from
the time the expenditure was made.   He is only chargeable
with simple interest, as there is nothing to show that he was
guilty of *gross negligence.*   The balances would be very
small, and consequently annual rests should not be made.
[2 Kent's Com. 231, note.]

It is perfectly certain, that the statute of limitations does
not apply as to any part of the guardian's account; and as
for the taxation of costs, that was a matter within the court's
discretion.

COLLIER, C. J.—The mere fact that the guardian re-

turned to the Orphans' Court from time to time, a statement
of the account between the ward and himself, the ordering
of the same, by the court, to be recorded, and stating the ba-
lance upon the record according to the facts, is certainly not
*res adjudicata.* It does not preclude either party from show-
ing an error in such returns, or estop the court when called
upon to adjust the accounts upon final settlement, from exam-
ining all the matters of debit and credit, from the time the
guardianship commenced, and rendering such decree as may
be proper, upon a view of all the facts. This conclusion
seems to us to be so clear, that it is sufficiently illustrated by
its statement.

The marriage of the ward, after these occasional returns
were made and recorded, cannot be allowed to prejudice the
guardian. The rights of the husband were only co-exten-
sive with the guardian's liability, and he is entitled to nothing
more than the court would have adjudged if no marriage had
taken place.

By an act passed in 1821, it is enacted, that "in all cases
where it may be necessary to have any matter depending be-
fore any of said courts, or the Judge thereof, on any return
day, tried by a jury, the sheriff, by order of the Judge, shall
forthwith summon and impannel a jury." [Clay's Dig. 303,
§ 32.] It has never been supposed that this enactment made
it imperative upon the Judge to submit all disputed questions
of fact in cases before him to the arbitrament of a jury. He
must determine for himself in a case coming within the sta-
tute, whether it is necessary to call to his aid a jury, to ena-
ble him to pronounce the appropriate judgment; if he dis-
penses with such assistance, and adjudicates the facts, it is no
ground for reversal of a decree, in other respects correct. The
bill of exceptions does not inform us what were the facts
touching the issues tendered ; we cannot therefore undertake
to revise the judgment of the Orphans' Court upon this point,
but must intend it was proper. See Dobbs, et al. v. Cock-
erham's Distributee's, 2 Porter's Rep. 328.

The act of 1803, which prescribes the manner in which
the accounts of executors, administrators, and guardians shall
be taken, received, and credited, provides, that if no excep-
tion be taken to the judges report, the court "may decree an al-

Cunningham and wife v. Pool.

lowance of the account as stated; but if any person or persons, interested in the settlement of the said account, shall, by himself or attorney, appear and make exception to the report, the court shall either proceed to hear the proof and allegations, and correct or amend the mistakes or errors in the account as reported, or refer the same to auditors, who shall examine and restate the account, after hearing parties and witnesses, and make report to the next, or some subsequent term of the said court, for confirmation and allowance as aforesaid. [Cl. D. 226, § 27.] We think it entirely clear from this statute, that it is competent to offer oral testimony upon exception to the stated account of a guardian, and the fact that an item was not supported by a voucher, will not warrant the exclusion of evidence to support it.

A guardian is not bound by a declaration that he would not charge his ward for board, or other service he may have rendered her. Such a remark being merely casual, and founded upon no consideration, must be treated as entirely gratuitous; consequently it will be competent for the guardian to exhibit an account embracing these items of charge. It is perfectly clear, that the statute of limitations cannot bar a credit, to which the guardian would be otherwise entitled.

It was certainly proper, that the charges for the board of the ward, and other necessary expenditures of money for her benefit, should be placed to the credit of the guardian, as of the year when her estate became chargeable with them. He could not, with any propriety, be made liable for interest upon the ward's money in his hands, while at the same time what was due to him, should stand over to be brought forward as a credit for the first time, (and this too without the addition of interest,) upon the final settlement of accounts. The mode of computing interest in this case, was certainly equitable, and in conformity to usage. It does equal justice to the debtor and credit side of the account, by computing interest against both guardian and ward, from the time either became chargeable to the other, and striking a balance according as it may be.

In respect to the taxation of costs, so far as objected to,

ALABAMA.

it may be said, that the statute does not direct who shall pay them, or whether, where the litigation is *bona fide*, the estate shall be charged with them. It certainly cannot be assumed from the record, that injustice has been done the plaintiff in error, by directing each party to pay his own costs, and we cannot undertake to say that the point has been determined unwisely, or against law, so far as it concerns the parties. But if the court erred in this respect, does an error in the taxation of costs, authorize the reversal of its decree?

Our conclusion, from a view of all the points raised, is, that the decree of the Orphans' Court must be affirmed.