SMITH'S HEIRS v. SMITH'S ADM'R.

1. The widow of one deceased, has no right to occupy a plantation belonging to her husband, several miles distant from his residence, in a town, as keeper of a hotel, until it is allotted to her, as part of her dower; consequently cannot retain the rents upon the ground of *quarantine*.

2. Partial settlements made by an administrator, are not *res adjudicata;* either party may, upon final settlement, show an error in the accounts, and the court may examine all matters of debit and credit, from the time the administration commenced, and render such decree as may be proper, upon a view of all the facts.

3. If an administrator receives money or property, to which he is not entitled in his representative character, although he cannot hold it against the party entitled to it, yet the orphans' court cannot take it into the account, and render a decree against him therefor, on the settlement.

4. The orphans' court cannot confer authority upon an administrator, to receive the rent of lands situate in another state, and if he does receive it, he cannot be required to account for it as administrator, unless it be shown that it was received *virtute officii*.

5. The orphans' court cannot award damages to the widow, upon the allotment of dower.

Error to the Orphans' Court of Perry County.

UPON the final settlement of the accounts of an administrator of the intestate, the heirs and distributees of the estate excepted to the ruling of his honor J. P. Graham, presiding judge. It appears from the bill of exceptions, that the administrator claimed a credit of $3,344 80, to the allowance of which the heirs and distributees objected. On the settle-

42

ment it was admitted that the intestate died in the summer of the year 1838, possessed of a large real and personal property; that he resided in Aberdeen, Mississippi, from the first of January of that year until his death; that he owned and kept the "Aberdeen Hotel," and at the same time owned and carried on a plantation from seven to nine miles distant from Aberdeen, and in the same county.

On a partial settlement of the intestate's estate, in the year 1844, the administrator received a credit for the rents of the "Aberdeen Hotel," as a part of the dower interest of the widow of the intestate, with whom he had intermarried —having charged himself in his account, upon a partial settlement, with all the rents, both of the lands and the hotel.

In the early part of the year 1844, the wife of the administrator petitioned for dower in the real estate of her deceased husband, and the same had been allotted to her. In that allotment was included the "Aberdeen Hotel," as well as the entire plantation which the intestate cultivated at the time of his death. The sum of $3,344 80, for which the administrator claimed a credit, was the rent of that plantation, from the death of the intestate until the allotment of dower in 1844.

Upon the marriage of the administrator with the widow, a settlement was made, securing her property to her, which had been proved and recorded in Perry county, previous to the consummation of the marriage.

The heirs and distributees produced and read to the court, a notice from the wife of the administrator, addressed to the judge of the orphans' court, as follows: "You are hereby notified, that I desire not to have the rents of my dower interest in the lands allotted to me as dower, out of the estate of my deceased husband, from his death to the allotment of dower in 1844, but desire that the same may lapse into the estate as assets. RUTH WILEY."

It was admitted by the heirs, that Mrs. Wiley, by her trustee, had filed a bill in chancery, in Dallas county, the residence of the administrator, for her separate interest in the

estate of the intestate, and in that bill claimed the rent above named ; but the trustee being present, proposed to have the bill amended in that particular, by striking out the claim for rent.

By a duly authenticated copy of a statute of Mississippi, it was proved, that the widow was entitled to one fifth part of the personal property of her deceased husband, and that in respect to her dower in the lands, the law of Mississippi is identical with that of Alabama, as found in Clay's Dig. 172, 173, § 3-7.

The original administration on the intestate's estate was granted in Monroe county, Mississippi, where he died—the administrators in that State resigned, and subsequently, a considerable portion of the estate having been removed to Alabama, the present administrator here, administered, and the credit he claimed was allowed him.

A. B. MOORE, for the plaintiffs in error, insisted that Mrs. Wiley was not entitled to the rents of the plantation in Mississippi, unless they were assigned her as a part of her dower, or at least until the land out of which they arose was allotted to her—the " Aberdeen Hotel," where her deceased husband lived and died being disconnected with it. The statute which authorizes a widow to retain possession of the house, plantation, &c. free of rent, until her dower is assigned her, will not give her the rents for the same if she abandons the possession and cultivation, and permits the premises to go into the possession of the administrator, or to be rented out by him.

If the administrator took possession of the plantation, leased it out, and charged himself with the rents, the money thus received by him became assets in his hands, and he cannot be allowed a credit for the amount, upon the ground that his wife, as the widow of a former husband, was entitled to the possession free of rent. Conceding however, that the widow had a right to the rent, the proof shows that she voluntarily relinquished it.

A. GRAHAM, (of Perry,) for the defendant in error, contended that the administrator had improperly charged him-

self with the rent, and the orphans' court only allowed the charge to be corrected. 9 Ala. Rep. 330. The rent of land accruing after the death of the ancestor was not assets at common law, and no statute of Mississippi is shown which makes it such; but if assets in that State, the orphans' court of Perry has no jurisdiction over lands there, or of rents which may accrue from them. Story's Confl of L. § 514, a and b.

The rent of the plantation was due the widow as damages for the detention of her dower from the death of her husband until its allotment, and the heirs and distributees cannot claim it. 1 Roper on H. & W. 439; 4 Kent's Com. 65; Sedg. on Dam. 128. If the statute of Merton is not in force in Mississippi, the act extending the widows *quarantine* till the allotment of dower, bars the heirs from claiming the possession of, or rent for, the last residence of the deceased husband, and the plantation pertaining thereunto. 4 Kent's Com. 62. The rents received by the administrator were not assets in his hands, but are to be held by him absolutely, in virtue of his marital rights, or as a trustee for his wife, under the marriage settlement. 2 Kent's Com. 130, 134.

The offer of the wife to relinquish her right to the rents, and allow them to become assets, and of her trustee to a-mend the bill filed, would, if permitted, have devolved upon the orphans' court the administration of a difficult head of equity jurisdiction, which its powers do not permit it to exercise. If the rents were not assets in the first instance, Mrs. Wiley could not make them such by expressing a wish that they should be so considered. The renunciation by the widow of her right to the rents in favor of the heirs and distributees, might entitle them to sue the administrator for the amount, but they cannot recover it on a settlement with the orphans' court, and thus charge himself and sureties.

If the rents were assets in the administrator's hands, perhaps Graham v. Abercrombie, 8 Ala. Rep. 558, might have some application; but it has been shown that they are the profits of the widow's separate estate.

The widow is entitled to the rents of the mansion house and plantation of her deceased husband, whether she resides thereon or not. 6 Monr. Rep. 562; 7 Id. 338, 642. If a

husband, living with his wife, receives the profits of her separate estate, it will be intended to be with her consent, and she cannot compel him to account, or divest his right at her mere pleasure.   2 Ves. jr. Rep. 698; 11 Id. 225; 2 Ves. & B. Rep. 36; 17 Johns. R. 548.

COLLIER, C. J.—The act of 1812, "concerning dower," enacts that the widow shall be endowed of "one third part of all the lands, tenements and hereditaments, of which her husband died seized and possessed, or had before conveyed, whereof said widow had not relinquished her right of dower, as heretofore provided for by law; in which said third part shall be comprehended the dwelling house in which her husband shall have been accustomed most generally to dwell, next before his death, together with the offices, out-houses, buildings, and other improvements thereunto belonging, or appertaining," &c.   Further, the widow may "file her petition in the circuit or county court of the county where her husband shall have usually dwelt, next before his death, setting forth the nature of her claim, and particularly specifying the lands, tenements and hereditaments, of which she claims dower, and praying that her dower may be allotted to her." The proceedings upon such petition shall be summary, and the court shall at the first term when such petition is filed, proceed to hear and determine, as to them shall seem just and right.   Again: "It shall be lawful for the widow to retain the full possession of the dwelling house in which her husband most usually dwelt next before his death, together with the out-houses, offices or improvements, and plantation thereunto belonging, free from molestation and rent, until she shall have her dower assigned her."

In Weaver & Gaines v. Crenshaw, 6 Ala. Rep. 873, it was held, "until dower is assigned to the widow, she has no estate in the lands of her deceased husband.   The widow's *quarantine*, by our statute, does not extend beyond the right to occupy the dwelling house, out-houses, &c., until her dower is assigned.   Until then, she has no estate in the lands of her deceased husband, but a mere right to have her dower allotted to her."   So it has been decided, that "damages

are properly the mesne profits arising after the death of the husband, and before the suit for dower. These were not allowed at common law, but were given to the widow by the statute of *Merton.* In this case, the chancellor has properly restricted the widow in the recovery of profits, to the time of the institution of the suit, the defendant being a purchaser. As against the heir, the rule would have been different, and damages would have been recoverable from the death of her husband. But whatever may be the rule at law, in equity the established doctrine is, to allow the widow the mesne profits as damages; and this not by analogy to the allowance of damages under the statute of *Merton,* but on the ground of title. This is decisively settled in the leading case of Curtis v. Curtis, 2 Brown's Ch. Rep. 619; Beavers & Jemison v. Smith; 11 Ala. R. 20. Let this notice of our statute law, and the decisions of this court suffice to guide us to a conclusion.

As the record states, the intestate resided in Aberdeen, and owned and kept the "Aberdeen Hotel," at the time of his death, it must be intended, that if the hotel was not his dwelling house, that he at least dwelt in that town. The plantation was seven or eight miles distant, and it cannot with any propriety be said that it belonged to the house in which the husband of Mrs. Wiley "most usually dwelt, next before his death," merely because it was situated in the same county. There was no particular connection between the house in town and plantation, other than they both had the same proprietor; this merely proves that the plantation *belonged* to the intestate, and not that it was attached to the house. If a plantation, seven or eight miles from a residence in town, may be regarded as appertaining to it, when the deceased husband had no plantation nearer, may not one twice, or even ten times the distance be considered in the same predicament? However the law may be, where one has a homestead in a town or the country, disconnected with his plantation, and his business is planting, his residence being selected with a view to health or society, we think the connection within the meaning of the act cited, cannot be maintained, where (as in this case,) the husband was the

proprietor of a hotel in town, occupied and kept it open. Mrs. Wiley, as the widow of the intestate, had no right to occupy the plantation of which the latter died possessed; and her present husband, in virtue of his marital rights, was not authorized to take and retain the possession until it was allotted to her as a part of her dower; and consequently cannot vindicate the retention of the rents upon the ground of the wife's *quarantine.*

Partial settlements made by an administrator are not *res adjudicata;* either party may, upon final settlement, show an error in the accounts, and the court may examine all matters of *debit* and *credit,* from the time the administration commenced, and render such decree as may be proper upon a view of all the facts. 9 Ala. Rep. 615; see also, Id. 330. Now, although the administrator may have charged himself with the rent of the plantation, it is clear that if he was not thus chargeable by the orphans' court, it was competent for him to show, and the duty of that court to make the correction.

We assume it as a postulate, that if an administrator receive money or property belonging to the estate of his intestate, to which he is not entitled in his representative character, although he cannot hold it against the party legally entitled, yet the orphans' court cannot take it into the account, and render a decree against him therefor, on the settlement of the administration. A court of law, proceeding according to the ordinary forms, or a court of chancery, may hold him accountable, and render complete justice.

In Leavens v. Butler, et ux. 8 Porter's Rep. 380, we said, neither the common or statute law, give to an executor *virtute officii,* a right to the possession of the testator's lands. If they are devised, they pass by the will to the devisee, who has the right of entry and possession—if undevised, they descend to the heirs, who are entitled to the possession. If the lands are required to pay debts they may be sold under the order of the orphans' court, upon the application of the personal representative, notwithstanding the possession of the devisee or heirs. We also said, in Terry v. Ferguson, Id. 500, "It is clear that the duties of an administrator do not require, or even authorize him in *the ordinary course of ad-*

*ministration*, to exercise a control over the real estate of his intestate ; yet if he assumes to lease it, he will hold the rent *in trust* for those legally entitled." Subsequent to these decisions, a statute was enacted, making it lawful "for executors and administrators to rent at public outcry, the real estate of any decedent, until a final settlement of the estate of the said decedent is effected, and that the proceeds shall be assets in the hands of such executors or administrators." This act, it has been held, can only have a prospective effect, (1 Ala. Rep. N. S. 226,) and we may add, it cannot operate *extra territorium*, as the orphans' court cannot confer upon the personal representative an authority or control over the lands of the deceased situated in another State. 8 Ala. Rep. 380 ; see also 7 Ala. Rep. 906.

We have repeatedly held, that the power and extent of the jurisdiction of the orphans' court, is necessarily limited by the legislative acts which prescribe its authority and manner of proceeding. That court cannot award damages to the widow upon an allotment of dower ; nor does the circuit court possess such a power under our statutes. The case cited from 11 Ala. Rep. explicitly states, that the court of chancery is alone competent to extend such a measure of relief to the widow. It is not pretended that damages have been adjudged to Mrs. Wiley, but only that she was entitled to them, as accessorial to her right of dower.

It does not appear that the statutes of Mississippi have modified the law of dower since the separation of the territory of that State from this, in 1817 ; nor does it appear that the present administrator received the rents from his predecessor in Mississippi, or whether he leased them to some third person, or charged himself as an occupant with the rent. What has been said will sufficiently show, that there is nothing in the record to indicate that the administrator received the rents *virtute officii;* but in the condition in which the cause is presented, the reverse is rather inferable; consequently he cannot be required to account to the orphans' court.

We have already said, that if he is not authorized to retain them, he may be compelled to pay them over to the dis-

tributees, trustees of his wife, or whoever may be entitled. But relief must be sought in the appropriate tribunal. It follows from what has been said, that the decree of the orphans' court must be affirmed.