## LAWSON'S ADM'R *vs.* LAY'S EXECUTOR.

1. If an administrator in chief make a loan or gratuitous bailment of a slave belonging to the estate, both he and his bailee are guilty of a conversion ; but the administrator himself cannot avoid the bailment, nor sue for the recovery of the property.

2. The statute of limitations begins to run in favor of the loanee or gratuitous bailee of the administrator in chief, from the time of the appointment of an administrator *de bonis non.*

3. If the loanee of the administrator marry, and her husband come into possession of the slave, he is liable for damages in detinue, both for his own detention and that of his wife before marriage.

4. And if he die before suit brought, and the slave come to the possession of his executor as assets, the latter is liable for his own detention and that of his testator, and no demand is necessary.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. TURNER REAVIS.

DETINUE by Alexander Lawson, as administrator *de bonis non* of Elijah Lawson, deceased, against Thomas T. Tyree, as executor of Amos Lay, deceased, for a slave named Isaac. The facts of the case appear at length in the opinion of the court, and in the report of the case in 23 Ala. 377.

ROBERT H. SMITH, for appellant :

Although the loan of the slave was good against the administrator in chief, and he could not sue, (Pistole v. Street, 5 Porter,) yet, as to the estate, and the administrator *de bonis non,* it was void.—Ventress v. Smith, 10 Peters 173, 176 ; Weir v. Davis & Humphries, 4 Ala. 445 ; Dearman v. Dearman & Coffman, 4 *ib.* 526 ; Swink's Adm'r v. Snodgrass, 17 *ib.* 653 ; Fambro v. Gantt, 12 *ib.* 298 ; Steger v. Bush, 1 S. & M. Ch. R. 188. This loan, then, was a conversion, on the part of the widow and Sanderson, for which Lay, by marriage, and taking the slave, became liable.—See previous opinion in this case, 23 Ala. 388.

The slave was not held by such adverse possession, as will authorize Lay to invoke the statute of limitations.—Angell on

Lim. 402 § 5, 327 § 27, 329 § 8; Ward v. ———, 2 Har. & McH. 145; Strong v. Strong, 6 Ala. 347. Nor could he invoke the statute of limitations, because the illegal contract was binding on Sanderson, and he could not sue (Pistole v. Street, 5 Porter 64); and there was no one in being who could sue, until Lawson was appointed administrator *de bonis non*.— Murray v. East India Co., 5 Barn. & Adol. 61; Angell on Lim. 55, and cases cited in note 1; 6 Ala. 605; 2 Porter 171; 3 Stewart 172; Hopper v. Steele, 18 Ala. 828, 837.

The transaction was a fraud on the estate, and therefore the statute does not run.—Powell v. Wragg & Stewart, 13 Ala. 161; Beach v. Catlin, 4 Day's R. 284.

As to the time from which hire should have been given : When the case was here before, one of the errors assigned by the present defendant in error was, the ruling of the court in allowing damages from the time of suit brought; the court held, that there was no error in this prejudicial to him. The question now is, was there any error in this charge prejudicial to the present plaintiff in error. It is insisted, that damages should have been allowed from the time the wrong was done. The action of detinue is nothing but debt in the *detinet* : the damages given are for the wrongful detention, and must be from the conversion, particularly, when a state of things was created by the wrong, whereby no one was *in esse* who could sue.—Glascock v. Hays, 4 Dana 58; Miles v. Allen, 6 Iredell 88. The authorities which assert general language seemingly adverse to this, use it in reference to particular facts, causing it to be true in those cases, but not applicable to this.

S. F. HALE, *contra* :

The only question is, as to the time from which plaintiff shall recover hire by way of damages for the detention. The negro went into possession of the widow, before her intermarriage with defendant's intestate, under a contract with the administrator in chief, who afterwards died before the termination of the bailment. There was, then, no person in being, after the termination of the bailment, to whom defendant's intestate could deliver the slave, until the appointment of the present administrator in 1851. All the authorities hold, that the unlawful detention of the property is the gist of the action

of detinue; and there can be no unlawful holding, until there is some one in being to whom the defendant may lawfully deliver the property; and until there is an unlawful holding, or detention, plaintiff is entitled to no damages. This is understood to be the ruling of the court, in this case, at the last term. —See the authorities cited on this point, by plaintiff in error, in that case.

At common law, an administrator was the owner of the personal estate of the decedent, and could bail the goods belonging to the estate, and there is nothing in our statutes prohibiting him from making such bailment.

GOLDTHWAITE, J.—The record before us presents the following state of facts: Elijah Lawson died in 1828, owning the slave sued for, and leaving a widow and three children, the oldest being seven years of age. Shortly after his death, Lemuel G. Sanderson took out letters of administration on his estate, and in his representative character took possession of the slave, and subsequently allowed him to go into the possession of the widow without hire, with the understanding that she was to have him for the purpose of assisting her to raise her children; no time being fixed for the limitation of the possession on the part of the widow, except the raising of the children. The slave remained in possession of the widow, under the possession thus obtained, until the year 1832, when she married Amos Lay, and from that time in the possession of the husband, until his death in 1851, and then went into the possession of his executor as assets, the letters testamentary having been taken out in the same year. Sanderson died, in 1834, without having administered the slave; and in 1851 letters of administration *de bonis non* upon the estate of Elijah Lawson were granted to the plaintiff, who sued the executor of Lay in detinue for the slave, no demand having been made before suit. The principal question is, as to the time the plaintiff is entitled to recover damages.

We think it is clear that Sanderson, the first administrator, had no right to make the disposition of the slave which he did. It is true, the statute (Clay's Digest, 223 §13) does not, in express terms, declare a loan or bailment of this character unlawful or void; but it is equally against the policy of the statutes,

which govern the action of administrators, as a private sale ; indeed, it strikes us as a manifest absurdity, to hold that, while the law prohibits a private sale, it recognizes a loan for any number of years. Here was a gratuitous disposition of the property for more than fifteen years; and we have no hesitation in declaring, that it could pass no right as against the estate. Whatever may have been the intention of the administrator, or however much the motives which prompted him to action may be respected, it is impossible to regard the act in any other light than as a violation of his trust, and void at law, as against those whose legal rights were affected by the transfer.—Swink v. Snodgrass, 17 Ala. 653. Sanderson, however, could not be allowed to avoid the disposition he had made of the slave, on the ground that it was in violation of his trust, (Pistole v. Street, 5 Port. 14; Fambro v. Gant, 12 Ala.; Swink v. Snodgrass, *supra* ; Kavanaugh v. Thompson, 16 Ala. 818 ) ; and as the bailment would be binding upon him, and he could not sue, the statute of limitations did not commence running until the appointment of the administrator *de bonis non* in 1851, since, until then, there was no one to maintain the suit, against whom the statute could operate.—Neil v. Cunningham, 2 Port. 171 ; Sledge v. Clopton, 6 Ala. 589 ; Hopper v. Steele, 18 Ala. 828. And as the assets of the estate, when disposed of by the administrator in violation of his trust, may, when they remain in specie, be covered at law, by the administrator *de bonis non*, (Swink v. Snodgrass, *supra*,) it follows that the plaintiff is entitled to recover.

The loan of the slave by Sanderson, being unauthorized, was a conversion ; and as the trust which it was in violation of was created and governed by the law, the taking and retention of the property by the widow, under the disposition thus made, was equally a conversion on her part ; and the damages for such detention could be recovered after her marriage, in detinue against the husband and wife (2 Leigh's N. P. 782 ; Co. Litt. 351) ; but if the husband died before judgment, his liability would be discharged.—Woodman v. Chapman, 1 Camp. 189 ; Maffit v. Commonwealth, 5 Barr 359. In the present case, as the action was not commenced until after the death of the husband, no recovery could be had against his personal representative, for damages accruing by the act of the wife before

coverture; and the right to a recovery being settled, we are thus brought to the question, whether damages can be recovered, in the action against the executor of the husband, for the detention during the marriage. We held in Brewer v. Strong, 10 Ala. 961, that an action of detinue could be maintained against the administrator in his representative capacity, upon the possession of the intestate, coupled with the detention by his representative after his death; and in Easly v. Boyd, 12 Ala. 684, we decided, that the same action could be revived against the administrator, where the thing sued for came into his possession as assets. Of course, in the last case, damages could be recovered for the detention in the life-time of the intestate; and if so, we can see no reason why they cannot be recovered for such detention, when the action is against the administrator, and is based in part upon such detention.

Is a demand necessary, to recover damages in this action for an unlawful detention, before the commencement of the suit ?

It was formerly held, that detinue could not be maintained, unless the defendant came lawfully into the possession of the goods (3 Blackstone's Com. 152; Com. Digest, Detinue, (D); Sel. N P. 657); and hence, w: find it laid down in the old writers, that *uncore prist* is a good plea in this action.—5 Com. Dig. 663. So in Roll. Abr. 574 it is said, " if the defendant, in an action of detinue, come at the first day, and plead that he hath at all times been ready to deliver the thing for which the action is brought, to the plaintiff, he is not liable for the detention thereof." This rule is laid down as applicable in all cases to this action, and there is good reason to apply it thus broadly when it was thought necessary that the taking should be lawful in order to give a recovery. To cases of this character the principle still applies; and whenever it is necessary to change a lawful possession into a wrongful detention, as to terminate a bailment, then no damages can be recovered, except from the service of the writ, unless a demand has been made. But the old doctrine, as to a lawful taking to sustain detinue, is gone with us (Pierce v. Hill, 9 Port. 151); and there can be no good reason for a demand, where the possession is unlawful. If it was essential in such cases, the necessary consequence would be, that the wrong-doer would not be liable to damages, so long as he could keep out of the way of a demand—a result so man-

ifestly unjust, that we should be inclined to doubt the soundness of any authorities which would lead to it. Our conclusion is, that in this action the plaintiff is entitled to recover damages for the wrongful detention, although no demand has been made; and if a party, as in this case, is placed in a condition in which it is impossible to restore the thing to the owner, he is still responsible for all the consequences of a possession, which commenced unlawfully.

As to our decision when the case was last before us (23 Ala.): It has no bearing whatever upon the case as now presented. There the court charged, that the plaintiff was entitled to recover from the issue of the writ, and the defendant complained of that charge. It was held, that the decision, if wrong, was an error in his favor ; and, although the language used by the judge who delivered the opinion, may have misled the court below, it does not at all conflict with the views we have expressed in this opinion.

As the plaintiff, upon the facts stated, was entitled to recover for the detention of the slave, from the time he came into the possession of the defendant's testator, which the record shows was at his intermarriage with Mrs. Lawson, the ruling of the court upon this question was wrong.

Judgment reversed, and cause remanded.