# SLATTER *vs.* MEEK AND WIFE.

[BILL IN EQUITY BY WIDOW, AFTER ALLOTMENT OF DOWER, FOR RECOVERY OF MESNE PROFITS.]

1. *Extent of widow's quarantine.*—The widow's statutory right to retain possession of the dwelling-house in which her husband most usually resided next before his death, free of rent, until her dower is assigned her, (Code, § 1359,) attaches only to the premises of which she is dowable.

2. *Widow's right to mesne profits accruing before allotment of dower.*—The widow is entitled to recover in equity, against the heirs, the rents or mesne profits accruing from the lands assigned her as dower, from the death of her husband, to the time when her dower was allotted.

3. *Jurisdiction of probate and chancery court to award mesne profits.*—The probate court has no jurisdiction to award to the widow damages for mesne profits : the chancery court alone is competent to grant that relief, and she may institute proceedings in that court after her dower has been assigned by the probate court.

4. *Limitation of suit for recovery of mesne profits.*—A bill in chancery, filed by a widow whose dower has been allotted to her by the probate court, for the recovery of the mesne profits accruing before the assignment, is not a "suit or proceeding for dower," (Code, § 1372,) but, by analogy to an action for the use and occupation of land, (§ 2477,) may be brought at any time within six years after the accrual of the cause of action.

5. *Widow's liability for rents as set-off against claim for mesne profits.*—Where the wife joins with her husband in a deed conveying their dwelling-house, (in which they continue afterwards to reside until the husband's death,) in consideration of a promise by him to procure and fit up for her another city residence ; and the husband, in fulfillment of his promise, procures another house, which he proceeds to fit up as a residence, but to which he has neither a legal nor perfect equitable title at the time of his death, and which is afterwards occupied by his widow and family, with the knowledge and approbation of his administrator, for a part of the time intervening between his death and the allotment of dower to the widow,—the widow cannot be charged by the heirs, in a proceeding by her in equity for the recovery of the mesne profits accruing before the assignment of her dower with the value of the rents during her occupation of the house.

6. *Statute of frauds avoided by performance of contract.*—After a contract has been completely executed by both parties, their rights, duties, and obligations, resulting from such performance, are not affected by the fact that the contract was within the statute of frauds.

7. *Widow's liability for hire of slaves as set-off against claim for mesne profits.*—In a proceeding in equity by the widow, against the administrator and heirs-at-law of her husband, for the recovery of the mesne profits accruing before the assignment of her dower, she cannot be charged, by way of set-off, with the hires of certain slaves belonging to the estate, which went into her possession under a gratuitous bailment from the administrator ; there

being no cross bill seeking a settlement and distribution of the estate, and it not being shown that the distributees have exhausted their remedies against the administrator and his sureties.

8. *Who is liable for mesne profits.*—Where the husband executed a deed, by which he covenanted, in consideration of natural love and affection, to stand seized of a tract of land, of which he afterwards died seized, for the use and benefit of his daughter for life, and after her death for her children, and to allow her to have the use and enjoyment, or to receive the rents, the daughter cannot be considered an alienee, but is liable to the widow for mesne profits from the death of the husband.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed on the 13th June, 1857, by Alex. B. Meek and Emma D., his wife, (formerly Emma D. Slatter,) against the administrator and heirs-at-law of Hope H. Slatter, deceased, who was the former husband of Mrs. Meek; and sought to recover as mesne profits the rents of certain real estate, which had been assigned to Mrs. Meek as her dower interest in said estate, accruing between the death of said Slatter and the time when her dower was allotted. Slatter died, intestate, on the 15th September, 1853, in the city of Mobile, which had been the place of his residence for several years. His heirs-at-law were his widow and four children; three of the latter being minors when the bill was filed, and, the fourth being then the wife of William D. F. Holly. Shadrack F. Slatter, the brother of the intestate, was duly appointed administrator of his estate, by the probate court of Mobile, and, in that capacity, was made a defendant to the bill. On the 7th August, 1856, the intestate's widow filed her petition in said probate court for an allotment of her dower in the real estate of which the intestate died seized and possessed, making the administrator and heirs-at-law parties defendant thereto; and, on the 5th January, 1857, obtained a decree in her favor. A transcript from the records of the probate court, showing the proceedings had on said petition, was made an exhibit to the bill. The complainants alleged, that the entire rents, income and profits of the lands in which Mrs. Meek's dower was assigned, accruing between the death of the

intestate and the time of the allotment of dower, had been received by the administrator and Holly and wife; and claimed that Mrs. Meek was entitled to one-third of these rents, as incident to her dower.

A formal answer was put in by the guardian *ad litem* of the infant heirs. The administrator filed a separate answer, and Holly and wife answered jointly; the answers being substantially the same. Each admitted the death of the intestate, his seizin and possession of the real estate described in the exhibit to the bill, and the allotment of dower therein to Mrs. Meek, as alleged in the bill; denied the complainants' right to recover any portion of the rents; insisted that, if they were entitled to recover any thing, they should be made to account for the rent of a dwelling-house in the city of Mobile, which the intestate was fitting up as a residence at the time of his death, and which was occupied by his widow for more than two years, and also with the hire of certain slaves which she had in her possession during the same time; pleaded the statute of limitations of three years, as prescribed by section 1372 of the Code; and demurred to the bill for want of equity. The administrator also admitted his possession of all the real estate, except one tract of land of which Holly and wife had possession, and his reception of the rents from the intestate's death; but insisted that, if he was liable on account of these rents, he should be allowed a credit for taxes and other incidental expenses incurred and paid by him. In reference to the tract of land of which Holly and wife had possession, they set up a deed executed by the intestate on the 12th November, 1851, which was made an exhibit to the bill, and by which the intestate covenanted with Mrs. Holly, in consideration of natural love and affection, that he, his heirs and assigns, would stand seized and possessed of the said tract of land, and hold the same upon the following uses and trusts: "That the said Ann P. Holly, for and during the term of her natural life, shall be permitted to receive the rents, or to have the use and enjoyment of the parcel of land aforesaid, and of all the issues therefrom, for her sole and separate use, free from the use, control or molestation of

any husband she may have; and further, that upon the death of the said Ann P. Holly, I, my heirs and assigns, will convey to her children all the estate and title that may at that time remain in us; and provided further, that if the said Ann P. Holly shall die without leaving any child or children who shall then be in life, these presents shall become wholly inoperative, and the estate in said land shall be held by me, my heirs and assigns. And whereas it frequently happens, that a sale, or other disposition of the property, may be beneficial to the parties interested in the same, I do hereby reserve to myself the power, during the life of my said daughter—to myself, my executors, administrators and assigns—to sell, or otherwise dispose of the same, with her consent, and to invest the proceeds of the sale, or the value of the property, to the same uses and trusts as I have herein and hereby declared in reference to the said land above described."

On final hearing, on pleadings and proof, the chancellor held the complainants entitled to relief, and ordered a reference of the matters of account to the master; directing him " to ascertain the net rents, after deducting all necessary expenditures, which have been received by the several defendants annually, from the death of Hope H. Slatter to the time of allotment, from the lands of which the complainant Emma D. has been endowed as the widow of said Slatter; also, to ascertain what is one-third the amount of said net rents, and the interest on the same from the time when received, and by whom received." On the coming in of the master's report, to which several exceptions were reserved by the defendants, the chancellor overruled all the exceptions, and confirmed the report.

The assignments of error in this court are : " 1. The chancellor erred in allowing the complainants any portion of the rents sought to be recovered by the bill. 2. The chancellor erred in allowing the complainants any portion of the rents of the lot conveyed by Hope H. Slatter to Mrs. Holly. 3. The chancellor erred, also, in not decreeing that the complainants should account for the value of the rent of the 'Bank house' occupied by Mrs. Slatter

after the death of her husband. 4. The chancellor erred, also, under the proof shown in the cause, in allowing the complainants one-third of the net rents from the death of the intestate. 5. The statute of limitations of three years was a complete bar to the [recovery of] rent of the lot conveyed by the intestate to Mrs. Holly, and the chancellor should have so held. 6. The allotment of dower by the probate court was a complete bar to any relief, and the chancellor should have so held. 7. Each exception to the master's report should have been sustained, and the chancellor erred in overruling them. 8. The decree is erroneous, as shown by the bill, answer, proof, and master's report."

E. S. DARGAN, for appellants.—1. The principal question in this case is, whether a widow, according to the laws of Alabama, is entitled to damages for the detention of her dower. At common law, the widow was clearly not entitled to such damages: the statute of Merton, 20th Henry III, first gave them.—3 Bacon's Abr., p. 241, *Dower and Jointure*, M; 4 Kent's Com. 65–69. This statute has been adopted in New York, and in several other States; and it has been uniformly construed to give damages against the heir-at-law from the death of the husband, but not against his alienee.—Authorities *supra*. But the statute of Merton is not of force in Alabama, because our legislation is inconsistent with it. The defect in the common law was seen by our legislature at an early day, and the act of 1812, giving the widow the right to retain the possession of the dwelling-house in which her husband most usually resided next before his death, free of rent, until her dower was assigned, (Clay's Digest, 173, § 7,) was passed to remedy this defect. This act, which, in legal effect, is continued in the Code, is irreconcilable and inconsistent with the statute of Merton; because, while the latter gave only one-third of the whole damages, our statute gives the use and profits of the whole, and, of course, is more favorable to the widow. Our statute was designed, not as a substitute only for the widow's quarantine at common law, but as

a substitute for dower until dower was assigned her.—Doe d. Shelton v. Carroll, 16 Ala. 148; Inge v. Murphy, 14 Ala. 289. A contrary construction would lead to most unjust results, and would allow a widow the entire use and profits under our law, and, in addition thereto, one-third of the use and profits under the statute of Merton.

It is objected to this construction, that a court of equity acts independently of the statute of Merton; that it acts on the rights of the parties, which, commencing from the death of the husband, must entitle the widow to her proportion of the rents. But, while it is admitted that many judges have asserted this principle, it is insisted that their judgments are directly opposed to their reasoning; for they have never given rents or damages against the alienee of the husband, except from the time the bill was filed, or the demand for dower was made.—2 J. J. Mar. 140; 1 B. Monroe, 199; 5 Monroe, 283; 5 Gill & John. 121; 4 Leigh, 498. If the court was governed by the common-law right, independent of the statute, why was a distinction drawn between the heir-at-law and alienee of the husband? The widow's right accrued against each at the same instant of time, and was paramount to the title of each; and there was no reason, aside from the statute, for making a distinction between them.

2. The decree of the probate court, allotting dower to Mrs. Meek, is a bar to the relief sought by the bill. The probate court has full and complete jurisdiction to assign dower; consequently, every part and parcel, indeed, all dower, is subject to that jurisdiction. That a portion is assigned in lands, and a portion in rents for the detention of dower, can make no difference; for the whole dower right is subject to the jurisdiction, and a final decree upon it concludes the entire right. If the widow's right to rents is a dower right, (and it cannot be anything else,) she cannot be allowed to split up her right, and claim a portion in the probate court, and another portion in equity.

3. If the widow's claim to rents can be sustained, she must certainly be compelled to account for the value of

the rent of the dwelling-house occupied by her. She cannot claim this by any rule of the common law, nor is it given by our statutes; and if she comes into equity by virtue of any equitable right, independent of her legal title, she will be compelled to do equity.

4. The statute of limitations of three years, as prescribed by section 1372 of the Code, is a b'ar to the right to recover rents of the lot conveyed by the intestate in his life-time to Mrs. Holly. The intestate's deed is a covenant to stand seized to the use of Mrs. Holly and her children. At the death of the intestate, therefore, he was seized to the use of another, and was a mere trustee. Hence, Mrs. Holly is an alienee, claiming adversely; and having been in possession more than three years when the bill was filed, no back rents accruing before the bill was filed can be recovered against her.

5. All the exceptions to the master's report are insisted on.

A. B. MEEK, *contra.*—1. The right of a widow, under the laws of this State, to recover in equity, against the heirs, rents or mesne profits accruing from the lands assigned her as dower, from the death of her husband to the time of assignment, was distinctly asserted by this court, in the case of Beavers & Jemison v. Smith, (11 Ala. 32,) and again in Smith's Heirs v. Smith's Adm'r, (13 Ala. 334;) and in Johnson v. Elliott, (12 Ala. 114,) she was held entitled to her proportion of the back rents, against the alienee of her husband. All the elementary writers and commentators agree as to this right of the widow, and place the allowance of the account for rents and profits on distinct equity principles, independent of the statute of Merton.—4 Kent's Com. 70; 1 Story's Equity, §§ 512, 628; Roper on Husband and Wife, vol. 1, pp. 452–54. An examination of the reported cases, both English and American, will show an unbroken and harmonious array of authorities from the earliest period down to the present day, in all of which the right is recognized, and its allowance referred to distinct equity principles.—Dormer v. Fortescue, 3 Atk. 130; Cas. *temp.*

Hardwicke, 25; Graham v. Graham, 1 Vesey, sr. 262; Hamilton v. Mohun, 1 P. Wms. 122; Mundy v. Mundy, 2 Vesey, 122; Oliver v. Richardson, 9 Vesey, 222; Curtis v. Curtis, 2 Bro. Ch. 491; Keith v. Trapier, 1 Bailey's Eq. 64; Gordon v. Stevens, 2 Hill's Ch. 46; Sharp v. Morris, 27 Miss. 733; 4 Johns. Ch. 604; 5 *ib.* 482; 4 Paige, 384; 5 Watts, 255; 7 Watts, 533; 1 App. 146; 2 Harring. 336. Opposed to these authorities are a single Ohio case, (U. S. Bank v. Dunseth, 10 Ohio, 18,) which stands solitary and alone in its extent, and several Kentucky cases, (2 J. J. Mar. 240; 4 B. Monroe, 366; .5 Monroe, 283,) in which the widow's right to mesne profits is denied. But, in reference to the latter, it is to be observed, that they were all cases in which the husband did not die seized, and were against his alienees; and that the right to mesne profits from the death of the husband, where he died seized, and the proceeding was against his heirs, is recognized in Kentucky.—4 J. J. Mar. 64.

2. The abstract question, whether the privilege conferred on the widow by section 1359 of the Code—to retain possession of the dwelling-house in which her husband most usually resided next before his death, free of rent, until her dower is assigned—was intended as a substitute for her dower during such possession, does not arise in this case. Here, the husband had no such dwelling-house, having sold the house in which he resided at the time of his death; and his wife, by joining in the sale, had relinquished her dower rights therein. But this statute clearly does not mean any dwelling-house in which the husband might reside at the time of his death, since he and his family might be boarders or temporary tenants in the house of another: it can only relate to such dwelling-house as the widow is entitled to dower in.—1 Sandf. Sup. Ct. R. 215. The dwelling-house, with all its appurtenances, had been sold, and the proceeds of sale had passed into the hands of the heirs, or been employed for their sole benefit; and the other real estate in which the widow had a right to dower was situated in remote and disconnected parts of the city of Mobile. If the statutory pro-

vision was intended as a substitute at all, it could only be in cases where it would prove a real and substantial substitute. It was intended, like the old law of quarantine, for which it was in fact the substitute, to give the widow a home and sustenance for herself and children until her dower should be assigned.

3. The jurisdiction of the chancery court, in this case, is unquestionable: it appears from the provisions of the Code, the decisions of our supreme court, and well-established equity principles. The probate court can only allot dower in the land by metes and bounds: its functions terminate with the confirmation of the assignment, leaving the widow to obtain possession and her other rights *aliunde*. A court of chancery is alone competent to grant her full relief, and its jurisdiction is maintained on several independent grounds.—Smith v. Smith, 13 Ala. 336; 4 Dev. & Bat. 505; Sharp v. Morris, 27 Miss. 733; 1 Bailey's Eq. 64; 2 Hill's Ch. 429; 4 Kent's Com. 70; 1 Story's Equity, §§ 456–58, 626–28; Adams on Equity, 530; 5 Peters, 503; 2 Bro. Ch. 495; 2 Vesey, 128; 3 Atk. 129; 8 Gill & Johns. 50; 4 Paige, 384; 4 Leigh, 498. Most of the same authorities—all in which the question arose—maintain the right of the widow to come into equity, for the recovery of mesne profits, after the allotment of dower at law. The objection taken by the appellants, that this is allowing the widow to split up her claim and thereby multiply proceedings, is fully answered by the fact, that there are here several defendants, each of whom has received portions of the mesne profits, and is liable to a separate account; consequently, this mode of proceeding diminishes the number of actions, and, moreover, affords the only means of adjusting the respective rights of the parties.

4. Section 1372 of the Code does not apply to this case,—it not being "a suit or proceeding for dower." That section, and the entire chapter of which it forms a portion, relate exclusively to dower in its technical and popular signification, having reference only to the widow's estate in her husband's lands. An action for mesne profits by the widow is analogous to a similar action after a

recovery in ejectment, which has always been distinguished from the action of ejectment proper, and could not be brought until after the possession had been recovered. Adams on Ejectment, 334; Stearns on Real Actions, 219, 346, 356; 1 Tomlin's Law Dic. 587; 2 *ib.* 461. An account for arrears of dower rests on the same ground precisely as an account for the rents and profits of real estate.—Keith v. Trapier, 1 Bailey's Eq. 69. This proceeding is in the nature of an action for the use and occupation of land, and is limited to six years from the accrual of the cause of action.—Code, § 2477; Hicks v. Sallitt, 27 Enq. L. & Eq. 212; Tillinghast on Limitations, 111, and cases there cited.

5. As to the sets-off claimed by the defendants: In the first place, this is not a proper matter to be introduced into the present litigation. Neither the nature of the proceeding, nor the state of the pleadings, authorizes an investigation into these matters: they properly arise on the final settlement of the administrator's accounts in the probate court. But, if the claim is to be here investigated, it is submitted that, under the proof, the widow cannot be charged with either the rent of the house, or the hire of the negroes. The evidence shows, that the widow relinquished her dower in the dwelling-house in which her husband died, in consideration of his promise to procure and fit up for her another residence in the city; that the house occupied by her was fitted up by her husband in fulfillment of this promise, and was occupied by her under this contract, with the knowledge and approbation of the administrator, and with the understanding that no rent was to be charged against her; and that the negroes, with whose hires she is sought to be charged, were placed in her possession by the administrator, for the use and benefit of the family, and were so employed by her during her entire possession of them. As to the validity of the contract between husband and wife, see Hoot v. Sorrell, 11 Ala. 386.

6. The deed set up by Holly and wife, for the tract of land in their possession, does not convey, or purport to convey to Mrs. Holly, any title to the said land. It was

35

simply a conveyance by the intestate to himself, to which Mrs. Holly was no party, upon the specified trust that he would pay the rents to her. If it amounted to anything, it was a simple charge upon the estate of the grantor—a simple promise to pay a sum of money. The widow was no party to it, and never relinquished her dower right in the land; and her husband could not thus deprive her of that right, or any of its incidents. Besides, the decree of the probate court, to which Holly and wife were parties, ascertains that the intestate died seized of that tract of land; and that decree, which cannot be thus indirectly impeached, gave the widow, by virtue of its effect, a right to the rents from the death of the husband.

R. W. WALKER, J.—The privilege conferred upon the widow by section 1359 of the Code, to retain possession of the dwelling-house where her husband most usually resided next before his death, until her dower is assigned her, free from the payment of rent, does not attach to any premises except those whereof the wife is dowable.—Harrison v. Boyd, in MSS.; Vorlckner v. Hudson, 1 Sand. Sup. Ct. Rep. 215; Coke's 2d Institute, vol. 1, p. 17. In this case, the husband had sold the dwelling-house in which he resided next before his death, some time prior to that event, and his wife had joined in the sale, relinquishing her dower therein. The statutory privilege of the widow, therefore, did not attach to the property. Hence, the question, whether the widow's enjoyment of her quarantine has the effect of destroying her right to a third of the rents and profits which, during the continuance of her possession of the mansion-house, may accrue from the other real estate of her husband subject to her dower, does not arise in this case. That question is, however, decided adversely to the view urged by appellants'· counsel, in Perrine v. Armstrong, at the present term.

[2.] There can be no doubt that the widow is entitled to recover in equity, against the heirs, the rents or *mesne profits* accruing from the lands assigned her as dower, from the death of her husband, to the time when

her dower was allotted.—Beavers v. Smith, 11 Ala. 32; Smith v. Smith, 13 Ala. 334. We need not now inquire whether this right exists by virtue of the statute of Merton, or by analogy to it, or is allowed upon the ground of title. For the purposes of this opinion, it is enough that the right exists. Upon this subject, see 4 Kent, 70; 1 Roper H. & W. 453–4; Curtis v. Curtis, 2 Brown's Ch. 491; Dormer v. Fortescue, 3 Atk. 142; Keith v. Trapier, 1 Bailey's Eq. 64; Sharp v. Morris, 27 Miss. 733.

[3.] The jurisdiction of the probate court extends no further than the allotment of dower by metes and bounds. It has no authority to award to the widow damages for *mesne profits*. The court of chancery is alone competent to extend to her that relief.—Smith v. Smith, 13 Ala. 336. The right of a widow, whose dower has been assigned by the probate court, to proceed afterwards in equity for the *mesne profits* accruing before the assignant, is distinctly recognized in Turner & Sharp v. Morris, 27 Miss. 737; and we see no good reason for questioning it. See, also, 1 Story's Eq. § 626; Damall v. Hill, 12 G. & J. 388; Sellman v. Bowen, 8 G. & J. 50.

[4.] Section 1372 of the Code provides, that " all suits or proceedings for dower must be commenced within three years after the death of the husband, and not after." Where dower has been allotted by the probate court, we do not think that a bill in chancery, afterwards filed by the widow, for the recovery of the *mesne profits* accruing before the assignment, can be considered " a suit or proceeding for dower," in the sense of this section of the Code. That section relates exclusively to suits or proceedings having for their object the recovery of that estate for life, in the real estate of the husband, which is denominated the wife's dower. Such proceedings do not necessarily or usually give the dowress her *mesne profits*, and her remedy for the recovery of these was not intended to be affected by the section of the Code above quoted. By analogy to the statute which provides that an action for the use and occupation of land must be brought within six years after the accrual of the cause of action, (Code, § 2477,) the widow's remedy in chancery for the

recovery of *mesne profits* is subject to the same limitation. In the present case, the bill was filed within less than six years after the death of the husband; so that it is unnecessary for us to inquire, whether the limitation begins to run against her from the death of her husband, the accrual of the rents, or the allotment of her dower.— Tarleton v. Goldthwaite, 23 Ala. 346.

[5—7.] The appellants claim, that they are entitled to have deducted from the *mesne profits* of the real estate assigned as the widow's dower, the value of the rent of a certain house, called the "Bank house," in which she resided for about two years after her husband's death; and also the hire of certain slaves belonging to the estate, which, it is alleged, remained in the widow's possession for about the same length of time.

The complainant, on the death of her husband in September, 1853, was left with her family in the residence of the deceased, which, however, he had previously sold, and in which she had, at his request, relinquished her dower. The evidence shows, that the complainant relinquished her dower in this property reluctantly, and only on the promise that she might continue to occupy it, as a residence, until the 1st November, 1853, (at which time it was stipulated that the purchaser should take possession,) and on the further promise from her husband that he would procure and fit up for her a finer residence in the city. The evidence tends to show, that the "Bank house" (with the rent of which the appellants now seek to charge Mrs. Meck) was the finer residence thus promised by the husband to the wife, as a consideration for her relinquishment of her dower in the other property; and that the object of Mr. Slatter in selling the Government-street house, was to use the purchase-money on the Bank house. It is shown that, at the time of his death, he had made arrangements to reside during the next year in the "Bank house," and that he was then engaged at great expense in fitting it up as a future residence for his family. The widow remained in the house occupied by her husband at the time of his death, until the time agreed on—the 1st November—and then removed to the

"Bank house." Here she continued to reside with her three children, and the negroes referred to ; and the evidence convinces us, that the residence and the slaves were kept, with the knowledge and approbation of the administrator, for the use of the whole family. During the residence of the complainant, with her children, and the family negroes of her husband, in this house, the administrator frequently declared, that " he intended the family should all live together until Mrs. Slatter was married," and that he meant to carry out his brother's wish that the family should occupy the "Bank house," and he wished them to do so. The evidence shows that no board was charged the children, and that the household expenses were paid in gross by the administrator; and it strongly tends to establish that it was neither the understanding nor expectation of either the administrator or the widow, that she was to be charged with the hire of the negroes. Some of the negroes the widow had no use for about the house, and requested the administrator to hire them out; but he declined to do so, and desired her to keep them.

If Mrs. Meek (then Mrs. Slatter) had not relinquished her dower in the house in which her husband died,' she would have been entitled to the possession of the same, ' free of rent,' until her dower was assigned her. As already stated, she was unwilling to relinquish her dower in that house ; and a part of the consideration on which she did so, was the promise of her husband that he would fit up for her a finer residence in the city, which she might occupy after the 1st November. The " Bank house" appears to have been fitted up by Mr. Slatter, and after his death occupied by his widow, in pursuance of this agreement. It is an admitted fact, that in this latter property the widow was not entitled to dower, for the reason that her husband had not in his life-time either the legal or a perfect equitable title thereto. If, therefore, Mrs. Meek is now to be charged with the rent of the " Bank house," there has been a failure of the consideration on which she agreed to relinquish her dower in the other property. Her occupancy of the "Bank house" was

in pursuance of the contract between her and her husband; and this, we think, is a full answer to the claim made against her for the rents of the property during such occupancy.—See Andrews v. Andrews, 28 Ala. 432.

The objection, that the contract between Mr. and Mrs. Slatter was within the statute of frauds, cannot, if well founded, now avail. Where the contract has been in fact completely executed on both sides, the rights, duties and obligations of the parties, resulting from such performance, stand unaffected by the statute.—Browne on Stat. Frauds, § 116.

In reference to some, if not all of the slaves alluded to, the evidence set out in the record tends to show, that Mrs. Meek's possession of them must be considered as having been held under a gratuitous bailment from the administrator. This being so, she would, perhaps, be chargeable in a court of law, at the suit of an administrator *de bonis non*, for their hire.—Lawson v. Lay, 24 Ala. 184; Hall v. Evans, at the present term. And it may be that, on a bill filed by the distributees, or other parties interested, for the final settlement of the estate, a court of equity would make her account for the value of the services of these slaves. But we think it clear, that the defendants in this suit have no right to set off the hire of the slaves, against the *mesne profits* of the real estate to which the dowress is entitled. There is no cross bill, seeking a settlement of the entire administration, and a distribution of the estate. It may be, that the share of the personal estate, to which Mrs. Meek is entitled, may exceed the value of the hire of the negroes during the time they remained in her possession. For aught that we know, too, Mrs. Holly may have received advancements in the life-time of her father to such an extent that, on a final settlement, she would be entitled to no part of the hire of these slaves. Again, the whole of this fund may be required to pay off the debts of the estate. Moreover, supposing that Mrs. Meek could, by any proceeding, be made to account for the hire of the slaves, it may be made a question, whether the distributees would not be bound in the first instance to exhaust

their remedies against the administrator and his sureties; for an administrator, who gratuitously bails the slaves of the estate to a third person, is guilty of a conversion, and renders himself liable to the distributees for the hire of the slaves during the continuance of such bailment.— Lawson v. Lay, 24 Ala. 184. Without, however, stopping to consider any of the questions here suggested, it is obvious from what has been said, that the chancellor did not err, in refusing to deduct from the *mesne profits* to which the widow was entitled, either the rent of the Bank house, or the hire of the slaves referred to.

[8.] We do not think that Mrs. Holly is a *purchaser*, within the meaning of the rule which exempts the alienees of the husband from liability for any *mesne profits* except such as accrue after the demand of, or institution of suit for dower by the widow. The probate court has no jurisdiction to allot dower in any land except that of which the husband *died seized.*—Thrasher v. Pinckard's Heirs, 23 Ala. 616. Holly and Wife were parties to the proceedings in the probate court; and the decree of that court is, perhaps, conclusive against them, that Mr. Slatter *died seized* of the lots, the rents of which they have received. Indeed, this fact is admitted in their answer. This being the case, and Mrs. Holly not being a *purchaser* from her father, there can be no question as to Mrs. Meek's right to recover the rents from the death of her husband, and not merely from the time she instituted the proceedings for the allotment of her dower.—See 1 Paige, 192.

We have not been able to discover any error in the disposition which the chancellor made of the several exceptions to the master's report.

Decree affirmed.