Mr. Justice McKINLEY
 

 delivered the opinion of,the
 
 cburt.
 

 This case is brought before the court by a writ of error to the Circuit Court for the southern district of Mississippi.
 

 The plaintiffs brought, an action of ejectment against-the defend-, ants in the court below; and upon the trial, the plaintiffs read in evidence, to the jury, the' copy of a plat and certificate of survey, signed by Charles Trudeau, royal surveyor of the province of'Louisiana, for .two thousand acres of land, French measure; and a patent, issued by the Spanish governor-of that province, thereupon, to James
 
 *757
 
 Mather, dated the 3d of April, 1794; and a deed- of conveyance from James Mather to George Mather, dated the 26th day of April, 1803, for the same tract of land; and. they , also read in evidence a certificate, dated the 10th day of April, 1806, signed, by. the commissioners, appointed by the Presicj.ent.of the. United "States, nrfder the act of Congress, of the 3d of March, 1803, and the act, supplemental thereto, of .the 27th of March, 1804, .confirming to George Mather the said tract of land, by virtue of the articles of agreement and cession between-the United States and “the state of Georgia. . It was' also proved that George Mather died, about the .year 1812, and that James Mather was his heir; and that James Mather had died' pending the suit; and it was admitted by the defendants, that the plaintiffs were the heirs of James Mather, iC and whatever title he had ' .at his death vested in them or any others, his heirs, to be shown.”
 

 And it was admitted by the plaintiffs, “ that the defendants were in possession of the land .in controversy, and were so at' the time this suit was brought, under derivative .titles from Robert Starke’s heirs, valid so far as Starke’s title was valid.” And the defendants in support of the issue, on their part, offerecTtO read the record of the proceedings in a suit in chancery, in the Supreme Qourt of the state of\Mississippi; in which the heirs of Robert* Starke were complainants), and the heirs of James Mather-defendants. t And by which record it. appeared,-that the complainants set up and claimed title to the land, here in controversy,’ under a warrant ^ order of survey, for two thousand acres of land, dated .about'toe 29th day of December, 1791, and the survey thereon; and the defendants claimed title under the survey and patent, of the Spanish government tó James Mather. And by the order and decree of that Court, toe land, in controversy in this suit, was adjudged and decreed to the heirs of Robert Starke.
 

 To toe reading of which record and proceedings, as evidence to the jury, the plaintiffs objected, on these grounds: “ First. That it does not purport to be a record on its face, and in its context. Secondly. That said record does not disclose, nor contain a. final ' decree ; neither the said record, nor the said decree therein being signed by toe judges of the said Supreme Court of Mississippi. Thirdly. That the pleadings and context .of said record show, that the chancery suit was entertained and treated by said Supreme Court as a matter of original jurisdiction ; whereas the statutes of Mississippi expressly provide,^that toe opinion of the Supreme Court shall be certified to toe’court below, whose action and'adoption alone can render toe opinion of the Supreme Court final upon a question of law adjourned for its opinion. Fourthly. That toe facts and toe law of toe case, did not give the Chancery Court jurisdiction, inas-.rnuch as, after the treaty of 1783, a Spanish warrant or order was a ' mere nullity, and could only be rendered valid, by the holder bringing himself within toe first section of toe act of Congress of 1803, by
 
 *758
 
 -.íesidence and cultivation; whereas, as the'record shows, that Starke was not within that act; nor, if he had been, could he have derived any equity against á title, confirmed by the articles of agreement and cession between Georgia.and the United States, of the 14th of April, 1802. Fifthly. That jurisdiction, legal and equitable, was vested elsewhere, by the 6th section of the act of 1803; such investiture of jurisdiction in an inferior-tribunal being exclusive of that of any other tribunal. Sixthly. 'That a.record or decree out- of .chancery is not evidence of a legal,.but an equitable title only, and is, therefore, not pertinent to the issue joined. Seventhly. That the decree, if read at all, must he read as an estoppel by the record, and subject to the rules as to estoppels. ' Eighthly. That a decree in chancery must be read on the same footing as a judgment at-law; and unless carried out by a conveyance, can have no greater effect than a judgment in ejectment.”
 

 The court overruled these objections, and permitted the record to go to the jury, as evidence of any fact decided by it To which opinion of the court the plaintiffs excepted. ' The plaintiffs, among other instructions, some of which' were refused and some granted, but which need not be noticed here, moved the court to instruct the jury,- “ that the decree read in evidence, by the defendant’s counsel, does not
 
 per se
 
 divest the plaintiffs,, or the ancestors of the plaintiffs, of the. legal title, but that said title remains unaffected at law by said decree, and is still in plaintiffs, if the jury believe them to be' the he'irs of said Mather.”
 

 There wére several instructions moved by the defendants, some of which were granted, and some refused; but as they-are either included in the ruling of th court, already noticed, or unnecessary to the decision of the points, on which we think this'.case ought to be decided, they- will not be noticed in the investigation of the subject.
 

 Two questions -are distinctly presented by the ruling of the Cir- ' cuit Court. First. Whether the' decree in the suit in chancery was a bar to the action of the plaintiffs. Secondly. Whether the Court of Chancery had jurisdiction of the subject matter, in controversy before it in that case. For the plaintiffs in error, it has been insisted, that the decree is not evidence of -a legal title, even if it were otherwise valid, and, therefore, no bar to the fiction of ejectment ; and that the possession of the defendants under the decree, without a deed of conveyance as directed by it, whether by the writ of
 
 habere facias possessionem
 
 or otherwise, gave no legal title to the defendants; and, theréfore, opposed no legal bar to the plaintiffs’ action. And, secondly, it was insisted, that neither the Court of Chahcery, nor the Supreme Court of the state of Mississippi, .had jurisdiction of the subject matter presented by the bill of the complainants. The whole power to confirm Spanish titles, protected by the contract of cession by the state of, Georgia to the United States, having been conferred, by act of Congress, on a board of commis
 
 *759
 
 sioners, whose decision was by law made fina], no other court could decide upon the validity .of those claims.
 

 The converse of these propositions was -maintained by the counsel for the defendants. • And it was insisted, that the decree operated as a conveyance, and also as adjudgment in ejectment, the Court of Chancery having the power by statute to award the writ of
 
 habere facias;
 
 and, therefore, the decree, and possession under it, is a legal bar to' the action of ejectment.. And upon the .second point it was. insisted, that the jurisdiction of the court over the subject matter of the decree could not be inquired into-by the court below, nor by this court, when brought before either collaterally. .To arrive at the legal effect of the decree, we must inquire into , the object and intention of the complainants, in bringing the suit in chancery. They charge in their bill, that. James. Mather had obtained froni the Spanish government the legal title to the land in' controversy, in fraud of.the rights of their ancestor, Robert Starke; ■ and they pray that by decree of the court, Mather may be compelled to surrender to them -the full and entire possession of the land, together with the evidences of title which he has-th ereto,, and that they maybe quieted in their title; “ and such other and farther relief in the premises as to the court shall seem meet.”
 

 The court by its decree established the right’of the complainants to the land in controversy, and ordered'Mather’s heirs, who were all non-residents of the state of Missisippi, to convey the land to the complainants, and to deliver to them the possession, and awarded the writ of
 
 habere facias ;
 
 .which writ the Court of Chancery1 is authorized to order by a statute of the state.. Without the aid of this writ, the court could-not have put the complainants into possession^ the defendants' being out of their jurisdiction; nor could they for the same reason compel a conveyance of the title to the land. - The decree is, therefore, if otherwise valid, nothing' more than an.equitable right, ascertained by the judgment and decree of a.court of chancery; and until executed by a conveyance of the legal title, according to the decree, Starke’s heirs, 'and those claiming .under them, have nothing but an equitable title to the land in controversy.
 

 To enable the defendants in this case to defend their, possession successfully, upon their own title, that title must be shown to-be a good and subsisting.legal title, and superior in law to that set up by the plaintiffs.; otherwise it opposes no legal bar to the recovery in the action of ejectment. And conceding, what was contended for in-argument, that the decree and possession under it, by the writ of
 
 habere facias,
 
 is equivalent to á judgment in ejectment, followed by like possession, it would avail the defendants nothing in this case ; because such a judgment and possession are no bar to another action of ejectment for the same premises. The defendant in ejectment can never defend his possession against the plaintiff upon a.
 
 *760
 
 .title in himself, by which-' he could not recover the possession, if he were out, and the plaintiff in possession. . Reversing the positions of the parties ‘in this case, could the defendants, if plaintiffs, recover the land.in controversy upon this decree, and evidence of • possession under it, against the title of the plaintiffs ? We have no. hesitation in saying they could not; and, therefore, the decree, if founded upon a valid equitable title, would' be no legal bar to the action of the plaintiffs. " ” .
 

 To a correct understanding of. the question of jurisdiction, argued •at the bar, it is necessary to ascertain the character of the grant set up by Starke’s heirs in the suit in chancery. This grant was obtained from the Spanish governor of' Ebuisiana, prior to the treaty between the United States and Spain, of the 27th of October, 1795. By this treaty, Spain admitted she had no right to the territory north of the thirty-first degree of north latitude'. In consequence of which, all the grants made by her authority, within that territory, were void. ’ This territory thenhelonged to the state of Georgia-; but by deed, bearing date the 24th day ,f April,' 1802, she ceded it to the United States. And in that deen it was stipulated, “ that all persons -who, on the 27th of'October, 1795, were actual settlers within the territory thus ceded, shall be confirmed in all the grants legally and fully executed prior to that day, by the former British government, or the government of Sp- in,” &c. The first section of the act of Congress of the 3d of March, 1803, chap, 80, (2 Story’s Laws,' 893,) enacts, “That any person ox persons that were residents in the Mississippi territory on the 27th of October, 1795, and who had prior to that day obtained, either from the British government of West Florida, or the Spanish government, any warrant or order of survey for lands lying within said territory, to which the Indian title had been extinguished, and which, on that day, had been actually inhabited and cultivated by such person' or -persons, or for'.his or their use, shall be confirmed in .their claims to such lands in the same manner as if their claims had been completed.” This section places those who had obtained a warrant or order of survey upon the same ground' with those who had complete titles. The 5th section of the act declares, “ That every person claiming lands By' virtue of British grant, or of the three first sections of this act, or of the articles of agreement and cession' between the United States and the state of Georgia, shall, before the last day of March, 1804, deliver to the register of the Land-office, within whose district'the' land may be, a notice in writing, stating the nature ¿nd extént of his claims, together with a plat of the tract or tracts claimed; and shall also, béfore that day, deliver to said register, for the purpose of being recorded, every grant, order, of survey, deed of convey--anee, or other written evidence of his claim, and the.same shall be recorded -by the said register in books to be kept for that purpose..” And upon the failure of the claimant to comply with these require
 
 *761
 
 ments, his claim is declared to be void, and shall never “ be received or admitted as evidence in any court in the United States against any grant derived from the United States.”
 

 . The 6th section of the act provides for the appointment of two boards of commissioners, for the purpose of ascertaining the rights of persons claiming the benefit of the -articles of agreement and cession between the United States and the state of Georgia, and of the three first sections of the act. Each board was authorized to hear and decide, in a summary-manner, all matters respecting such claims within their respective districts, and their determination was declared to be final.
 

 The record of the chancery .suit between Starke’s heirs and Má* ther’s heirs, shows that Starke was not resident -in the Mississippi territory on the 27th of October, 1795, but had removed therefrom some years before that period; that no notice of his claim had been given to the, register of the Land-office, within whose district it lay, together with a plat of the tract claimed and delivered to the register, to be recorded as required by law. 'Nor .does it appear that the claim was ever submitted to the board of commissioners for their determination.' Many years afterwards, the exact time not appearing by the imperfect record read in evidence, the court of chancery for the Mississippi territory, without any authority having been conferred on it by act of Congress for that purpose, took cognisance of Starke’s claim, and established its validity by its own judgment and decree.
 

 In the case of Henderson
 
 v.
 
 Poindexter, 12 Wheat. 543, 544, the court says,
 
 “
 
 The whole legislation en this subject requires that every title to lands in the country which had been occupied by Spain, should be laid before the board of commissioners. The motives for this regulation are obvious; and as the titles had no intrinsic validity, it was opposed by- no principle. Claimants could not complain, if the law which gave validity to their claims should also provide to examine-their fairness, and should make the validity depend upon their being laid before that board. The plaintiff in error has failed to bring, his case before the tribunal which the legislature had provided for its examination, and has, therefore, not brought himself within the law. No act of Congress applies to a grant held by a non-resident of the territory in October, 1795, which has not been laid before the board of commissioners. It is true that no act has declared such grants void; but the legislature has ordered the lands to be sold which were not appropriated in a manner recog-nised by law, and the land in controversy.^ of that description.
 

 “ If this view of the subject be correct, no Spanish grant, made while the country was wrongfully occupied by Spain, can be valid, unless it was confirmed by the contract with Georgia, or has been laid before the board of commissioners.” This tribunal was created for the express purpose of deciding all questions arising under
 
 *762
 
 the deed 'of cession by Georgia, securing to a particular class-of claimants the lands they occupied anch cultivated at the date, of the treaty between the United States and Spain, of the 27th of October;, 1795, and its decision was to be final; find therefore its jurisdiction was exclusive; unless, by express words,. Congress had conferred concurrent jurisdiction on some other judicial tribunal. From these propositions results the inquiry, Whether thé decree in the chancery suit was void, the court having no jurisdiction of the subject-mattér of the decree, or only erroneous and voidable ? If the former, then its validity was inquirable into in' the- current court, when' offered as evidence, .and it ought to have been rejected.
 

 , According to the decision in the case of Henderson
 
 v.
 
 Poindexter, above referred to, Starke’s claim, when submitted by his heirs to the Court of Chancery,'was utterly void; and no ppwer having been conferred by Congress, on that court, to take or exercise jurisdiction over it for the purpose of imparting to it legality, the exercise of jurisdiction was a mere usurpation Of judicial power, and the'whole proceeding of the court void.
 

 In the case of Rose
 
 v.
 
 Himely, Chief Justice Marshall said, “ A sentence professing on its face to be the sentence of- a judicial tribunal, if rendered by a- self-constituted body, or by a body not empowered by its government to take cognisance of the subject it had decided, could hayé no legal effect whatever. The power of the court then is, of necessity, examinable to a certain extent by that tribunal, which, is compelled.to decide whether its sentence has changed the -right of property. The’ power under which it acts' must be looked into, and its authority to decide questions which it professes to decide, must be considered. ” “ Upon principle, it would seem, that the operation of every judgment must depend on the power of the" court to render that judgment ;• or, in other-words, on its jurisdiction over the subject-matter which it has determined.” In the case of Elliott and others v. Piersol and others; 1 Peters, 340, it was-held by this court, that “ Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and - whether its decisions be. correct or- otherwise, its judgment; until reversed, is regarded'as binding in every other court. But if it acts without authority, its judgments and orders are regarded as nullities. They are not voidable but simply void, and form no bar to a recovery sought, even prior to a reversal, in opposition to them. They constitute no justification; .and all persons concerned in executing such judgments or sentences are considered, in law, trespassers. This distinction runs through all the cases on the subject; and it proves, that the jurisdiction of any court exercising authority over a subject, may be inquired into in every other court when the proceedings of the former are relied on, and brought before the latter by the party claiming the benefit of such proceedings.”
 

 The same doctrine was maintained, by this court, in the case of
 
 *763
 
 Wilcox and Jackson, 13 Peters, 511, and the case of Elliott and others
 
 v.
 
 Piersol and others, referred to, and the decision approved. These cases being decisive of the question of jurisdiction, we deera - it unnecessary to refer to any other authority-.on that point. From the view we have taken of the whole subject, it is our opinion, the decree of the Supreme Court of Mississippi would have been no bar - to the action of the plaintiffs in this case, if the subject-matter of .the.suit had been within its jurisdiction.' But we are of the opinion, that court had no jurisdiction of the subject-matter, and that .the' whole proceeding is a nullity. The Circuit Court erred, therefore, in permitting the record to be read to the jury, as evidence for any ‘ purpose whatever. Wherefore the judgment of the Circuit Court is reversed.-