# ANDERSON, ADMINISTRATOR, vs. McGOWAN, ET AL.

[FINAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS.]

1. *Executor; power to sell in a will, a personal trust.—Held,* upon the authority of *Perkins v. Lewis,* present term, that after property of a testator has been allotted among the devisees and legatees, under the first article of the will, the executor alone could sell it under the other provisions of the will, and that such power of sale is a personal trust, and does not attach to the executorial office.

2. *Same; influence of* § 1339 *Code, as to.*—Section 1339 of the Code affects only a devise or naked power to executors to sell land, unaccompanied with any trust personal to executors ; but where it is evident from the will, that a personal trust is created, it has no application.

3. *Same; personal trust.*—A testator, by his will, confers upon his executor a power to sell, after the payment of debts, and after an allotment to the testator's children of their shares, but gives no power to sell the shares of the widow, and then creates the executor, in legal effect, a trustee to loan out the money, and directing that security be taken, and that the trust should continue until his children should become of age, or marry. The administrator *cum testamento annexo,* under the supposed authority of the will, and without any order of court, and without setting apart the shares as provided by the will, sells the real and personal property of the testator :—*held,* that the will constitutes a personal trust, which the executor alone could execute, without the intervention of a court of equity, or some statutory regulation ; that the trust did not pass to the administrator *cum testamento annexo ;* and that the sales of real and personal property of the testator, by the administrator, were without authority of law, and as to the children void ; and that the administrator was chargeable with the value of the personal property sold at such sale.

4. *Administrator with the will annexed ; his authority under the will.*—If the power conferred by said will upon the executor, could have been executed by the administrator, (of which, *quere ?*) it was only after the "shares" had been allotted to the children of the testator.

5. *Same ; not liable for rent of land.*—The said sale of the lands belonging to the testator by the administrator, did not render the administrator liable for the value of the rent of the lands thus sold by him, (BYRD, J. *dissenting,*) *held,* that if an administrator takes possession of land, and makes an illegal sale of it, and the purchaser goes into possession under such sale, and retains possession thereunder, the administrator should be held liable for the value of the rent of the land from the sale thereof, to the time of trial.

6. *When lands are assets.*—The whole property of an estate, including the

Anderson, Administrator, v. McGowan et al.

lands, is charged with the payment of debts, but the land is assets in the administrator's hands, only through the statutory powers of sale, and renting.

7. *When appellate court will review decision of court below upon the evidence.*—Whenever the inferior court has jurisdiction of the subject matter and the parties, the appellate court will not review its decision, upon the evidence, unless *all* the evidence as to the particular matter, is set out in the record and an exception taken to the ruling of the court upon it.

APPEAL from the Probate Court of Wilcox.

In the matter of the estate of Richard P. Anderson, deceased, and a final settlement of the administration of Isaac E. Anderson, surviving administrator, upon said estate; D. R. McGowan, in right of his wife, Mary V. McGowan, who was the widow of said decedent, and R. T. Simpson, as guardian, *ad litem* of R. P. Anderson and Elizabeth Anderson, minors, and children of said R. P. Anderson, deceased, who are the appellees in this court, contestants. The facts are as follows: Richard P. Anderson died in the year 1860, in said county, and left surviving him his widow, the said Mary V. and his two children. His will was duly admitted to probate 12th October, 1860.

The four articles of the will are as follows:

"Article I. I will and bequeath to my beloved wife and children, all my property, both real and personal, and all moneys, or effects, of whatever kind or description that I may own, in any manner, either in law or equity, to be equally divided among them, share and share alike.

Article II. It is my will that the shares of property which may be allotted to my children, shall be sold by my executor, as soon as my debts are paid off, to the highest bidder, on a credit of twelve months, with interest from date, and the purchase-money secured by such personal security as my executor may direct, and the said property shall be sold, at such place, and on such notice, as he may think proper.

Article III. It is my will that my executor shall lend out the money which may arise from said sale, belonging to my children, at legal interest, and collected annually on the

notes thereof, or renewed annually, and I wish this to con-
tinue until my said children shall attain their majority, or
shall marry.

. Article IV. I hereby appoint and constitute my beloved
brother, Isaac E. Anderson, executor of this my last will
and testament."

On the same day of the probate of the will, Isaac E.
Anderson relinquished his right to execute the will; and
he and one O. L. Jones were appointed by the probate
court, administrators with the will annexed of said estate,
and gave bond and qualified as such. On the 17th Decem-
ber, 1860, the administrators sold on the premises, the real
and personal property of the said decedent, on a credit of
twelve months, after having given due notice of the place
and time of sale.

The real and personal property thus sold, was owned by
the decedent and his father, Lewis Anderson, jointly; the
said Lewis being present at the sale, and consenting to the
sale of his portion of the property. The widow of the de-
ceased was also present at the sale, and consented that her
interest in the property might be sold at the same time
with that of the rest. Lewis Anderson became the pur-
chaser of the land, and went into possession immediately
thereafter, and continued in possession to the time of the
settlement. He paid the purchase-money to the adminis-
trator, Isaac E. Anderson, and an order of the court was
made on the 25th April, 1864, requiring the administrator
to make a conveyance to the purchaser. There was other
evidence introduced on the settlement, but the foregoing, it
is thought, present the facts necessary to a correct under-
standing of the legal questions decided by the court. As
the bill of exception states, "the court decided that the
sale of the land was void, on the ground that the will con-
ferred no power on the administrator to sell said lands, and
charged the administrator with the rent of said land from
the time of said sale up to the time of the trial, to which
ruling of the court, and to which charge the said adminis-
trator excepted. The court further decided, that the sale
of the personal property as to the minors, was void, on the
ground that the administrator had no authority to sell the

same under the will, and on motion of the guardian *ad litem*, charged the administrator with the value of the personal property belonging to said minors, and to this ruling and to this charge, the defendant excepted. The court further decided that the said Mary V. was bound by the sale of the personal property, and refused to charge the administrator with the portion of the personal property belonging to her, and overruled the motion made by her to charge the administrator therewith, to which ruling of the court, and the overruling of the motion, the contestants excepted." The contestants proved that no application was made to the probate court by the administrators to sell said property, and that no order was granted by said court to sell said property, and that said property was sold by said administrator, under and by virtue of said will. The administrator, Isaac E. Anderson, appealed and assigned the following errors:

1st. In setting aside the sale made under and by virtue of the will.

2d. In charging the administrator with the value of the personal property.

3d. In charging the administrator with the value of the negro Jack.

4th. In charging the administrator with the value of the rent of the land.

5th. In refusing to give the administrator credit by the $2,700 Confederate money funded in four per cent. Confederate certificates.

JOHN Y. KILPATRICK, AND W. B. MODAWELL, for appellant.—1. The record shows that the administrators, with the will annexed, had sufficient means arising from notes, accounts and cotton, in their hands, to pay the debts of decedent, and which was used and applied to the payment of the debts; therefore, the administrators were not required to postpone the sale of the property until the debts should be paid.

The declaration in the will in these words: "It is my will that the shares of property which may be allotted to my children, shall be sold by my executor as soon as my debts

are paid off," amounts to nothing more or less than an authority given to the executor to sell, and was not intended to restrict the sale to any particular time.—See *Cheghizalo v. LeBaron, Ex'or,* 21 Ala. 466. The testator directed the interest of his children in the property, to be sold and the money loaned out on personal security.

2. Therefore, if the sale as made was valid and binding, there was no conversion of any property by the administrators, and the surviving administrator should not be charged with rent for the lands, nor charged with the value of the personal property sold by them at said sale.—See *Freeman v. Scurlock et al.,* 27 Ala. 407.

3. The probate court, on final settlement, should not set aside the confirmation heretofore made, and decree made, rendered and entered upon the records of said court, by said court on the 28th April, 1864, directing the surviving administrator to make titles to the purchaser of the land sold by him as administrator on the 17th December, 1860. See Code of Alabama, §§ 1823, 1824, 1769, 1770.

4. There was no evidence before the court below as to the value of the rent of the land, or the number of acres cleared, therefore the court erred in charging the administrator with the rent as is shown in the record.

S. J. CUMMINGS, *contra.*—1. The will conferred on the executor merely a power to sell, after the happening of certain contingencies, namely, the payment of the debts of the estate, and the allotment of the shares of the children. Neither of these contingencies had happened. This was an extraordinary trust not pertaining to the usual duties of executor, and he should have pursued it strictly.—See Coke on Littleton, p. 13, note *a.*; 13 East's R., p. 118; 4 Kent's Com. (marg. p.) 330 and 333-4; Miller on Executors, p. 342; *Pendleton v. Fay,* 2 Paige's Chancery Reports, 204.

2. The administrator with the will annexed, held two trust estates; one for the widow and the other for the children. It was his duty under the will to have had them separated or allotted before sale; or at least, when the property was sold, two separate trust funds arose, and it

was his duty to keep them separate. In selling all together and making no separation of the two funds, he was guilty of such an improper mingling of the two trust funds as to amount to a conversion on his part, and render him personally liable to the minors.—*Key v. Boyd's Ex'r*, 10 Ala. 154.

The evil is the same, whether the improper mingling be with the trustee's own funds, or with those of another *cestui que trust*. The same impossibility of identification will arise. Hence we argue that on this ground also, he was properly charged by the court with these amounts.

BYRD, J.—1. Upon the authority of the case of *Perkins v. Lewis et al.*, at the present term, we hold that, after the allotment of the property of the testator among the devisees and legatees under the first article of the will, the executor alone could sell it under the other provisions of the will, and that such power of sale is a personal trust, and did not attach to the executorial office.

Section 1399 of the Code affects only a devise, or a naked power to executors to sell lands unaccompanied with any trust personal to executors. It does not touch a devise to executors, where it is evident from the will, that a personal trust is created. And this will, conferring a power to sell after the payment of debts, and after allotment to his children of their shares, and giving no power to sell the share of the widow, and then creating the executor in legal effect, a trustee to loan out the money, and directing the security to be taken, and that this trust should continue until his children should become of age or marry, must be held to constitute a personal trust which the executor alone could execute, without the intervention of a court of equity, or some statutory regulation ; and such a trust did not pass to the administrators *cum testamento annexo*.

But, if the power in this case could have been executed by the administrators, still they could only have done so after the "shares" had been allotted to the children of the testator.—*See authorities cited on brief of appellee.*

It results that the sales of the land and personalty by

the administrators, without an order of court, were without authority of law, and as to the children, wholly void.

The court below, consequently, did not err in treating those sales void as to the children, nor in charging the administrator with the value of the personal property sold by him or bought by him at such sale.

As to how far these sales may affect the rights of the widow, if she claims under the will, she being present, and consenting to the sale, we shall intimate no opinion, as the appellant has no cause of complaint, so far as the court passed on this question. Whether the purchaser can in a court of equity assert a claim and title to the interest of the widow as a devisee, to the land, it is not necessary to consider or decide, as the probate court is incompetent to enforce it, and is not authorized to adjudicate the matter in such a case as this, if in any.

The first, second and third assignments of error are disposed of by the views above announced.

2. The fourth is as follows: "In charging the administrator with the *value* of the rent of the land." As noticed in the brief of counsel, there is a total absence of proof in the bill of exceptions, as to the value of the rents of the land. The decree indicates, that there was some proof. The bill of exceptions purports to set out all the testimony, and the exception on this point, as shown therein, is in these words: "The court  *  *  * charged the administrator rent of said land from the time of said sale, up to the time of the trial, to which ruling of the court and to which charge the said administrator excepted."

Now, it is evident to us, that there was no controversy as to the value of the rent, and that the bill of exceptions and the assignment of error only raises the question of law as to the liability of an administrator for the rents of lands which he has sold without authority ; and to this point, we shall confine this opinion.

By statute, lands are made legal assets, and the personal representative is authorized to rent them out.—Code, §§ 1737, 1751.

It appears from the record, that the purchaser at the sale went into possession of the land, and has remained in

possession ever since the sale. It seems that the purchaser was a joint owner of the land with the testator, but that he consented to the sale.

We are satisfied that the administrator, under the evidence contained in the record and the law, was chargeable with the value of the rent of the land from the sale thereof, and possession of the purchaser at such illegal sale, to the time of trial. And this result is attained from the existence of statutory provisions already alluded to, and others, which relate to the same subject matter.

And this doctrine is in harmony with, if not in exact conformity to the following adjudicated cases.—*Boynton v. McEwen*, 36 Ala. 350, and cases cited in *Perkins v. Lewis et al., supra*, decided by this court.

Whether the administrator was chargeable with the portion of the rents allowed to the widow, is not raised by the assignments of error, in the argument of counsel, and therefore, according to the established practice of this court, we are relieved from passing on that question.

If an administrator takes possession of land, and makes an illegal sale of it, and the purchaser goes into possession under such sale, and retains possession thereunder, the administrator should be held liable for the value of the rents so long as it is held by his occupant. Having the power under the statute to enter the land to rent it, and he having entered and made an illegal sale, and put the purchaser in possession, must be held to account for the rents, and he must look to his occupant for compensation. It is an act of mal-administration, and he and his securities are liable for its consequences.—*Boynton v. McEwen,* 36 Ala. 348 ; *Harrison v. Harrison*, 39 Ala. 510, and cases cited ; *Henderson v. Simmons*, 33 ib. 298.

In the case of *Glenn, Adm'x, v. Waller, Adm'r, et al.*, at the present term, we held, that the administratrix was chargeable with the proceeds of the sale of timber ; and I am unable to appreciate any distinction, *upon principle*, between that case and the cases above cited, and the one in hand, as to the question under consideration. The case of *Martin, Ex'r, v. Williams, Adm'r*, 18 Ala. 190, is not opposed to the conclusion at which I have arrived. It only

decides that an administrator *de bonis non* cannot recover the use of lands which had been rented out by the administrator in chief in violation of law. That case, in some respects, is opposed to the cases above cited.

3. The fifth and last assignment of error does not raise any question appearing on the bill of exceptions, and we must presume, under repeated decisions of this court, that there was no sufficient evidence to support the allowance or credit claimed by the appellant, or that there was sufficient evidence to authorize the court in disallowing it, even where there is evidence in the record which would have authorized its allowance.

Whenever the inferior court has jurisdiction of the subject matter and the parties, this court will not review its decision upon the evidence, unless *all* the evidence as to the particular matter is set out in the record, (and it must affirmatively so appear), and an exception is taken to the ruling of the court upon it.

A majority of the court hold, that the court below erred in charging the administrator with the rents of the land, and for that error the decree of the court below must be reversed and the cause remanded.

A. J. WALKER, C. J.—My brother judge and myself concur in the opinion, that error was committed in charging the administrator with the rents of land illegally sold by him. The whole property of an estate, including the lands, is charged with the payments of debts, but the land is assets in the administrator's hands only through the exercise of the statutory powers of sale and renting. *Ashurst v. Ashurst*, 13 Ala. 784; *Smith v. Smith*, 13 Ala. 334; *Smith v. Wiley*, 19 Ala. 217; *S. C.*, 22 Ala. 396; *Smith v. King*, 22 Ala. 562; *Petit v. Petit*, 32 Ala. 308; *Duncan & Hooper v. Stewart*, 25 Ala. 413. If the land were assets which the administrator illegally converted, he should be charged with the proceeds or value, which the law does not permit.—*Ashurst v. Ashurst, supra; Petit v. Petit, supra.*

In *Martin v. Williams*, 18 Ala. 190, it was held in reference to a state of statute law not so varying as to effect the question, that the proceeds of an illegal renting are not assets of the estate.

The mere sale of land without authority does not even throw a cloud over the title, and we cannot perceive how it can render the seller responsible for the rents.—*Posey v. Conaway*, 10 Ala. 811.

It has been held by this court, that an administrator occupying land could, at the election of the distributees, be charged with rent for the period of his occupation, but those cases fall far short of sustaining the ruling of the court below.

We concur with our brother Byrd in the other points ruled by him.