## ANDERSON'S ADM'R *vs.* McGOWAN AND WIFE.

[CONTEST IN PROBATE COURT ON FINAL SETTLEMENT OF ADMINISTRATOR.]

1. *Authority to sell land given by will ; what does not create a personal trust.* Authority to sell lands, given in a will in such terms as : "It is my will that the shares of property which may be allotted to my children shall be sold by my executor, &c.," is not the creation of a personal trust. The power given belongs to the office of executor, and not to the person, and it may be exercised by an administrator with the will annexed, under section 1609 of the Revised Code.

2. *Same ; what does not vitiate sale.*—That the sale was directed to be made after the payment of the debts and the allotment of the slaves, did not vitiate a sale made before.

3. *Widow ; what bound by.*—Where the widow consented that her share of the real and personal property should be sold with those of the children, she is bound by the sale, and the admistrator is chargeable in her favor with her share of the proceeds.

4. *Confederate money, credit for ; when administrator entitled to, for amount paid out for widow and minors.*—The administrator, in such case, is entitled to credit against the widow for Confederate currency, which she received willingly or without restraint ; and against the minor distributees, an allowance for such currency must depend entirely on the necessity.

5. *Overruled case.—Anderson v. McGowan,* 42 Ala, 280, overruled as to construction of the will in this case.

APPEAL from Probate Court of Wilcox.
Heard before Hon. J. H. BURDICK.

THIS is an appeal from certain rulings and decrees of the probate court, in the matter of the final settlement of the estate of R. P. Anderson, deceased, on the accounts filed by appellant as administrator *cum testamento annexo ;* the widow of testator and the minor heirs, by their guardian *ad litem,* being contestants.

Appellant's testator died in the year 1860, leaving the following will :

" I, R. P. Anderson, being of sound and disposing mind and memory, and knowing the uncertainties of life, do make and publish this as my last will and testament, as follows:

Article I. I give and bequeath to my beloved wife and children all my property, both real and personal, and all moneys or effects of whatever kind or description, that I may own in any manner, either in law or equity, to be equally divided among them, share and share alike.

Art. II. It is my will that the shares of property which may be allotted to my children shall be sold by my executor, as soon as my debts are paid off, to the highest bidder; on a credit of twelve months, with interest from date, and the purchase-money secured by such personal security as my executor may direct ; and the said property shall be sold at such place and on such notice as he may think proper.

" Art. III. It is my will that my executor shall lend out the money which may arise from said sale, belonging to my children, at legal interest, and collected annually or the notes therefor renewed annually ; and I wish this to continue until my said children shall attain their majority, or marry.

" Art. IV. I hereby constitute and appoint my beloved brother, Isaac E. Anderson, executor of this my last will testament.

" Given under my hand and seal, October 4th, 1860.

R. PAULLING ANDERSON." [Seal.]

Witnesses :

W. B. MODAWELL,

G. E. JONES, JR.

This will was admitted to probate, &c., on the 12th of November, 1860, and on the same day the executor filed in court his written renunciation of his right to execute said will, and thereupon the court appointed said Isaac E. Anderson and Osborn L. Jones, administrators *cum testamento annexo.* Testator left him surviving his widow Mary E. and two minor children, Elizabeth and Richard, and at the

time of his death owned considerable estate of both real and personal property.

The administrators, Anderson and Jones, on the 17th day of December, 1860, after giving thirty days' notice, by advertisement in a newspaper published in Camden, of time and place of sale, sold (without an order from court,) all the property of their testator, both real and personal, on twelve months credit, and reported the sale to the probate court February 18, 1861. At the time of the sale, the administrator had on hand money, in par funds, sufficient to pay off all the debts of the estate, and the sale was made before all the debts were paid.

The administrator offered to prove, on the settlement, that Mary E. (the widow, now intermarried with McGowan,) was present at said sale, and consented to it, and in various ways (which are set out in the bill of exceptions,) ratified the same; but the court, on motion of contestants, would not allow the administrator to introduce this proof, and the administrator (the appellant) excepted.

It also appears from the evidence set out in the bill of exceptions, that Jones, the co-administrator of Anderson, died in 1862; and from that time until the final settlement of the estate, it was managed by appellant and his agent, Modawell. The appellant was absent in the army from April, 1862, until the war ended in 1865.

In April, 1864, one of the purchasers of a part of the land paid his note in Confederate currency, which was duly reported to the court, and thereupon title conveyed to him by order of the court. Many of the notes given for purchase of property were paid in Confederate currency; and it was proved that all of the Confederate money thus received by said estate was collected by said Mary E. and the agent of the administrator, and that said Mary E. aided and assisted in lending the same out; and that the agent of the administrator, with some of the Confederate money received for purchase of land, bought several promissory notes for the estate, one of which was collected after the war in United States currency; and that at the time these notes were purchased all the obligors were perfectly solvent. It was also proved that Modawell invested twen-

ty-seven hundred dollars of the Confederate money belonging to the estate in four per cent. Confederate bonds; and that, in the spring of 1864, at the time this was done, there was nothing else in circulation but Confederate treasury notes and Alabama notes redeemable in Confederate treasury notes, and that the most prudent and sagacious administrators in that part of the country made similar disposition of the trust funds in their hands, as the best that could be done.

The contestants objected to the allowance of items of credit, in the account, for the Confederate money received from sale of the property, for the investment in Confederate money, for the promissory notes purchased by the administrator, and for the amounts in Confederate money charged as paid out to and for the use of the widow and minors, on the ground that the administrator had no right or authority to receive or invest the funds of the estate in such currency, or to purchase said promissory notes, &c. The court sustained the objection to these items of the account, and refused to allow any credit for said items, and proceeded to audit and settle said account, charging the administrator with the full value, in ¡United States currency, of the personal property sold, omitting the lands and the rents, allowing credits only for debts and other expenditures on behalf of the estate paid out in par funds; and rendered a decree in favor of the widow and children of the testator for the amount thus found due.

The administrator reserved twenty-one exceptions to the rulings of the court, and assigned as many errors, but the above are all that are material to the questions passed on by the court.

The various rulings of the court to which exceptions were reserved are now assigned as error.

W. B. MODAWELL, and J. Y. KILPATRICK, for appellant.
1. The administrators had power to sell the property of testator.—Rev. Code, § 1609; 6 Randolph, 574; *Peebles v. Watts*, 9 Dana, 102.

2. The administrators were forced to sell without an order of the probate court, or not sell at all; and if the pro-

bate court had granted an order of sale, the order would have been null and void.—*McCollum v. McCollum*, 33 Ala. 711; Rev. Code, § 1609 (1309); Pamph. Acts 1853–54, p. 45; Rev. Code, § 2068.

3. The general rule of law is, that the execution of a power must be according to the substantial intention and purpose of the party creating the power; not restraining or lessening it by a narrow and rigid construction, nor by a loose and extended interpretation dispensing with the substance of what was meant to be performed.—*Jackson v. Veeder*, 11 John. 169.

5. Powers are to be construed equitably in a court of law, as well as in a court of equity.—3 Burrows, 1446.

5. The court below ought to have permitted the introduction of the testimony tending to establish the consent of Mary E. Anderson to the sale.—*Anderson v. McGowan*, 42 Ala. 280.

6. The court below ought to have allowed the administrator credit for Confederate funds.—*Houston v. DeLoach*, 43 Ala.

7. Mrs. McGowan being present at, and consenting to, the sale, is thereby estopped from setting up any claim to her share of the property.—*Anderson v. McGowan and Wife*, 42 Ala. 280; *Moore v. Levert*, 24 Ala. 310; *Pool v. Harrison*, 18 Ala. 514; *Cady v. Owen*, 34 Vt. 598; 46 Me. 15; 35 Barbour (N. Y.) 150.

S. J. CUMMING, *contra*.

[Appellee's brief did not come into Reporter's hands.]

B. F. SAFFOLD, J.—This case was before this court at the January term, 1868, (42 Ala. 280,) on some of the questions now involved, especially in respect to the depositary of the powers conferred by the testator's will.

The executor appointed by the will, Isaac E. Anderson, renounced his right, and he and Osborn S. Jones were appointed administrators *cum testamento annexo*. Under the power of sale given in the will, they sold all of the property, real and personal, on a credit of twelve months, with

interest from the day of sale, after due notice by publication.

The probate court, in compliance with the decision of this court, regarded the sale as void for want of authority in the administrators, and charged them with the value of the personal property, omitting the land and its rents.

The will of the testator contained four items. By the first, all of his property was bequeathed to his wife and children. The second and third were as follows: "*Article* 2. It is my will that the shares of property which may be allotted to my children shall be sold by my executor as soon as my debts are paid off, to the highest bidder, on a credit of twelve months, with interest from date, and the purchase-money secured by such personal security as my executor may direct; and the said property shall be sold at such place, and on such notice as he may think proper. *Article* 3. It is my will that my executor shall lend out the money which may arise from said sale, belonging to my children; at legal interest, and collected annually; and I wish this to continue until my said children shall attain their majority, or shall marry." The fourth item appointed his brother, Isaac E. Anderson, his executor.

This court, in 42 Ala. 280, held that the power of sale conferred by the will was a personal trust, and did not attach to the executorship. That such a trust did not pass to the administrators *cum testamento annexo,* and consequently the sale made by them was void.

Perhaps the most thorough examination which this subject has received in our reports, is contained in *Hitchcock v. U. S. Bank of Penn.,* 7 Ala. 386. There, after appointing his wife his executrix, the testator devised and bequeathed all of his property to her in trust, with full power to sell, publicly or privately, all or any part thereof, and to reinvest and resell for the payment of debts, and for the benefit of his wife and children, until the latter became of age respectively. In a last codicil he speaks of his executrix having power to sell real estate. This devise was construed to vest the property in his wife as trustee personally, and not as executrix, though an apparent doubt was expressed as to what would be the construction of the codicil

if it stood alone. One of the reasons given for the construction adopted was, that the devise was not for the purpose of sale merely, but that the estate should be kept together and held in common, by her, for her benefit and that of the children.

In *Judson v. Gibbons*, 5 Wend. 224, the testator gave and devised to his executors thereinafter named, and to the survivor and survivors of them, all the residue and remainder of his property, upon trust to take care of and manage the same, and invest the income thereof in stocks or other securities, until his youngest child should attain the age of twenty-one years, and then to divide, &c. This was held to be a devise to the persons named as trustees, and not as executors. It was also held that one of them who refused the executorship was properly made a party to the suit as devisee, because he had not disclaimed or released the trust also. This conclusion was based somewhat on the fact that the devise was not merely to sell, but to hold and manage.

In *Perkins v. Moore, Judge &c.*, 16 Ala. 9, the testator directed certain shares of his estate to be kept and loaned out upon interest by his executors until either of the beneficiaries should marry or arrive at lawful age. It was held that the executor's title and possession were as executor, and not as trustee. And the rule of construction is asserted to be, that the executor should be considered as holding the legacy in his character of executor, unless it clearly appears from the will that the testator intended it should be held by him as trustee, and not as executor.—See 10 Gill & Johnson, 27.

In *Leavens v. Butler*, 8 Port. 380, the testator gave his executors most ample power to sell, encumber, or otherwise dispose of all or any part of his real estate, to pay debts, or for distribution, or any other purpose connected with their trust. The court held that there was no devise to the executor, but the powers conferred were annexed to the office of executor.

But the authorities are not agreed on this matter, and perhaps as many can be found on one side as the other. The diversity proceeds, no doubt, in great part, from the

consideration that an administrator appointed by the court should not be allowed to exercise the extraordinary powers conferred by the testator upon some valued friend, whose integrity and capacity had decided his choice. In discriminating between the executor and the administrator, and declaring that the powers of the former were restricted to the person, the distinction has not always been observed between a devise to trustees as such, and to executors as such. The common law was tenacious of the difference between real and personal property. Our institutions do not require the distinction to be so jealously guarded, though it is well defined, and we would not remove it.

Section 1609 of the Revised Code enacts: "Where lands are devised to several executors, or a naked power given them by will, to sell, the survivor or survivors, and the acting executor or executors, when any one or more of them resigns, or refuses to act, or is removed by a court of competent authority, and also an administrator with the will annexed, has the same interest in, and power over such lands, for the purpose of making sale thereof, as the executors named in such will might have had." The authority given is not confined to the case of a naked power, but includes a devise to the executor. It would not embrace a devise to trustees as such.

The point of the question in this case is, whether the powers given in the will attach to the office of executor, or to the person named as executor. The recitals are, "It is my will that the shares, &c., shall be sold by my executor," (Art. 2); and, "It is my will that my executor shall lend out the money," &c., (Art. 3). There is no mention of any trust, and the proceeds of the sale are the legitimate subject of executorial care. There is not only no exclusion of the intention that the executor should take as such, but it is inconceivable how more definitely a conveyance to to him in that character could have been expressed. The executor, in relinquishing his right to execute the will, and afterwards accepting the administration and exercising the power of sale, most clearly indicated the capacity in which he acted.

The intention of the testator must govern the construc-

tion of his will, and it is a legitimate presumption that one making his will since the adoption of the statute contained in section 1609 of the Revised Code, if he intended to confine the powers given to the person nominated as his executor, would have avoided the operation of the law in express terms.

We regret to depart from the judgment of this court heretofore rendered in this case, (42 Ala. 280,) but our convictions of the proper construction to be given to the will compel us to decide that the sale made by the administrators with the will annexed was valid, and that the settlement of their accounts must be made on this basis. The making of the sale before the debts were paid was immaterial, because no rights of other parties were, or could be prejudiced, under the circumstances.

As the bequests were, or ought to have been, vested in debts well secured, the onus is on the administrators to show that they were properly administered. Unless the necessities of the children required the collection of some of the money in Confederate currency, or the threatened insolvency of some of the debtors, or some other equally urgent cause made it necessary, the property ought not to have been so exchanged. We can not give any more definite instructions than those contained in the case of *Houston v. DeLoach*, 43 Ala. 364.

If it is shown that Mrs. McGowan's interest was sold with the other by her consent, the administrators are chargeable with her share. Any credits claimed against her for Confederate money which she received without constraint should be allowed. Any participation by her with the administrator or his agent in receiving Confederate currency, or lending money to be returned in that currency, for him, would not transfer his liability to her, because she had no authority in the matter, and he should have acted on his own responsibility.

The decree is reversed and the cause remanded.