## Hester, *pro ami*, *v.* Watkins *et al.*

*Bill in Equity to vacate Final Settlement of Guardian.*

1. *Guardian; final settlement of; when cannot be set aside.*—A ward, who, in 1862, after she became of age, or shortly before, was induced, without any fraud or misrepresentation, to accept payment of the amount due on the guardian's final settlement in Confederate currency, and for nine years thereafter, while under no disability or influence, retained the money, without any objection, cannot afterwards maintain a bill to set aside the settlement, on the ground that undue influence, exercised over her by the guardian, who was a kinsman, induced the acceptance of that currency.

2. *Payment in Confederate treasury notes.*—The voluntary acceptance, during the late war, of Confederate currency, in payment of a debt due the creditor in his own right, extinguished the debt.

APPEAL from Chancery Court of Calhoun.
Heard before Hon. B. B. McCRAW.
The opinion states the case.

J. C. ELLIS and W. H. BARNES, for appellant.

FOSTER & FORNEY, *contra*.

MANNING, J.—The bill in this cause was filed in 1872, by appellant, against her former guardian, Watkins, and his surety, Douthit, to set aside a settlement of the guardianship made in September, 1862, and to compel payment in the currency or money now in use, of the amount (less than

$1,000) then found due to her, and paid in the treasury notes of the late Confederate States.

No complaint is made of error in the account by which that settlement was made, or of mistake cr misrepresentation in regard to the currency with which the indebteduess was discharged.    Nor was any offer made to return the treasury notes before they became valueless.    But it is averred that at the time of the settlement, complainant was a minor of the age of twenty years and about three months; that she was induced to enter into it, against her will and remonstrances, by the persuasions of her guardian, who was also her uncle, and had undue influence over her; and that he himself, being temporarily at home from service in the Confederate army, was urged—as he represented to her—to make the settlement by his surety, Douthit, to whom the good money belonging to her had been lent, in the year 1860, by her guardian.    The Confederate currency paid to her (she further says) was exchanged for interest-bearing treasury notes of the Confederate States, with said Douthit, and these, except $100, she always afterwards retained, and still has.

On the part of defendants, it is denied that complainant, at the time referred to, was a minor under twenty-one years, or that any persuasion, or undue influence, or influence of any kind, was used to induce her to enter into the settlement, or receive the payment made in 1862.    On the contrary, they aver that the settlement was of her own seeking, and entered upon at her own instance, upon her assertion that she was over twenty-one years old; that it was made at the office of the judge of probate of the county, the account and calculations being made up by him; that her uncle proposed that she should accept in payment the promissory note which he had received from Douthit, with a good surety to it, for the money lent to him, instead of requiring Douthit to pay the money, because it was not then convenient for him to do this; and that she insisted on having the money, the greater part of which Douthit had to borrow.    Nothing appears to have been said by anybody of the payment being made in anything else than Confederate treasury notes.

Upon most of the matters in issue the evidence is conflicting.    The allegations of fraud and undue influence in the bill, are not established.    Complainant certainly represented herself to be over twenty-one years old in September, 1862.    She asserts that she became of age in June, 1863.    The testimony of the witnesses is contradictory; some affirming that she became of age in June, 1862, and others in June, 1863.

It is not pretended that complainant did not perfectly

understand the transaction in which she took part, or that her uncle, the guardian, obtained any advantage or profit to himself from it; or that she supposed that he thereafter considered, or held himself, bound as her guardian; or that she repudiated to him or any one else the settlement or payment that had been made; or that she was in any way prevented or hindered from doing so, at any time, before her bill in this cause was filed, in 1872.

The case presented is one of the acceptance by complainant, in 1862, of Confederate currency in payment of the amount due to her, after she became of age, or a short time before she became of age, and the retaining of it eight or nine years afterwards, when she was under no disability or influence, without objection, or claim made and pursued to set aside the transaction.

Our predecessors in office, some of whose opinions probably induced the bringing of this suit, held, in *Ponder v. Scott*, (44 Ala. 242), that the acceptance by a creditor of payment in Confederate treasury notes, of a debt due to himself in his own right, extinguished the debt.

In *Anderson's Adm'r v. McGowan*, (45 Ala. 462), they ruled that such a payment made to a widow, and taken by her without constraint in compensation for her right of dower in her deceased husband's estate, was a just credit in favor of the administrators of the estate against her, on settlement. And in *Catterlin v. Morgan*, (50 Ala. 501), they made a like decision against a female distributee of the estate. The court there say: "It appears that the administration was commenced prior to the late war, and that the balance above mentioned was the proceeds of property of the estate sold by the administrator. No circumstances of the reception of the Confederate funds are shown. But, on the 13th of September, 1864, about five weeks after the final settlement was made, the petitioner, in consideration of the amount of the decree in her favor paid to her, gave a receipt to the administrator in full satisfaction of the decree." And the satisfaction thus made in Confederate funds (the court held) estopped her from opening the settlement and repudiating the payment.

According to these cases, decided by our predecessors, and many others in this and other courts, complainant is precluded from maintaining this suit to set aside a settlement, which she either fully concurred in when it was made, or ratified by acquiescence afterwards.

Even in cases in which one party has been defrauded by misrepresentations of another, which the former is not aware of at the time, and afterwards finds out, the rule is that he is not entitled to the aid of a court of equity unless he

[Dane v. Smith, Auditor.]

move within a reasonable time after the discovery of the fraud. In this case, over nine years elapsed before this suit was brought, after the settlement was made, and over eight or nine years after complainant became of age, and over six years after the 21st of September, 1865, up to which time the convention of that year declared, by ordinance, a suspension of the statute of limitations, in consequence of the war. And this is also a reason why it cannot be maintained.—*Kern v. Burnham*, 28 Ala. 428.

The decree of the chancellor is affirmed.